Nikki Sue ZINGER and Daniel Wayne Risher *v.* STATE of Arkansas

CR 92-923                                          852 S.W.2d 320

Supreme Court of Arkansas
Opinion delivered May 3, 1993

*Jean M. Madden*, for appellants.

*Winston Bryant*, Att'y Gen., by: *Gil Dudley*, Asst. Att'y Gen., for appellee.

DAVID NEWBERN, Justice. The appellants, Nikki Sue Zinger and Daniel Wayne Risher, were convicted of the first degree murder of Zinger's mother, Linda Holley, and sentenced to life imprisonment. Zinger and Risher argue the Trial Court erred by (1) failing to grant a directed verdict in their favor, (2) giving a jury instruction on circumstantial evidence other than the model instruction approved by this Court, (3) failing to grant a motion for new trial when it was discovered that a juror was a convicted felon and thus should have been disqualified, (4)

allowing into evidence a photograph showing several stab wounds with wooden probes illustrating the entry of the wounds into the victim's body, and (5) refusing to allow testimony suggesting that someone other than those charged may have committed the crime. We find no error and affirm.

On March 10, 1991, officers from the Magnolia City Police Department were called to Holley's home by a friend of Ms. Holley, Buddy Hight. They entered through the back door and discovered Holley's body in the living room. The trailer had been ransacked. A medical examiner, Dr. Violetta Hnilica, testified Holley had been stabbed a number of times and had received several blows to the head causing multiple skull fractures. Investigating officers concluded a burglary was staged after Ms. Holley was killed. Glass from the broken rear door was found to be on top of items strewn on the floor. Evidence was also presented that someone had attempted to clean blood from parts of the area after the murder.

Risher was Zinger's boyfriend, and at the time of the offense the two were living at Risher's parents' home. Zinger and Risher lived part-time with Risher's parents and part-time with Holley. The State presented the theory that Zinger and Risher killed Holley to collect $90,000 in insurance proceeds for which Zinger was the beneficiary. Evidence indicated Zinger knew about her mother's insurance policy before the murder occurred. On March 14th, police found a box containing the insurance papers at Risher's parents' home. All officers testified the box was not in the trailer on March 11th when they conducted what they described as a very thorough search.

The State also introduced the expert testimony of Don Smith, a criminalist from the Arkansas State Crime Laboratory. Smith first examined a piece of polymer glass taken from Holley's eyeglasses lens which had been broken during the offense. Smith then removed all trace evidence from a camouflage type field jacket which was identified as belonging to Risher and which he had been seen wearing the probable day of the murder. In the right front pocket of the jacket, Smith found a fragment of glass similar to the polymer glass from Holley's eyeglasses lens. Smith also determined a piece of fiber removed from the jacket to be similar to a fiber which he believed came from Holley's nurse's

uniform worn by her at the time of the offense.

Using the chemical reagent Luminol, Smith tested various areas of Holley's home as well as items of clothing belonging to Zinger and Risher for the presence of blood. No objection was raised to the admissibility of this evidence. Smith stated the following items tested positive for the presence of blood: a robe hanging inside Zinger's closet, a pair of boots taken from the Risher home, and the camouflage jacket which had also been found in the Risher home. This testimony served further to connect Zinger and Risher to the offense.

### 1. Sufficiency of the evidence

Zinger and Risher contend the evidence was insufficient to support their convictions. Although they moved for a directed verdict at the close of the State's case, they failed to renew their motion at the close of the evidence. We will not consider an argument that evidence was insufficient to support a conviction when there has been no renewal of the directed verdict motion at the close of the evidence. *Henry* v. *State*, 309 Ark. 1, 828 S.W.2d 346 (1992).

### 2. Jury instruction

The jury was instructed in accordance with the approved model instruction, AMCI 106, which concerns circumstantial evidence. Approximately three hours after the jury retired to consider its verdict, they sent out a note requesting clarification of the following statement found in AMCI 106: "However, circumstantial evidence must be consistent with the guilt of the defendant and inconsistent with any other reasonable conclusion." The Trial Court then provided the jury with a more expansive, non-AMCI instruction on circumstantial evidence. No objection was raised to the instruction when it was read to the jury. Only after the jury again retired to deliberate was an objection raised.

Objections to jury instructions must be made either before or at the time the jury instructions are given. *Parker* v. *State*, 302 Ark. 509, 790 S.W.2d 894 (1990). An objection made after the jury retires is not timely.

### 3. New Trial

Zinger and Risher next argue the Trial Court erred by refusing to grant a new trial because a juror who participated had been convicted of a felony. Arkansas Code Ann. § 16-31-102(5) (1987) disqualifies convicted felons from serving on a jury. The controlling Statute in this case, however, is Ark. Code Ann. § 16-31-107 (1987) which provides:

> No verdict or indictment shall be void or voidable because any juror shall fail to possess any of the qualifications required in this act unless a juror shall knowingly answer falsely any question on voir dire relating to his qualifications propounded by the court or counsel in any cause.

The Trial Court correctly determined no juror was asked during voir dire whether he or she had been convicted of a felony. The Trial Court did not abuse his discretion in finding Harris did not knowingly answer falsely to any question on voir dire. Thus, the jury's verdict is not void or voidable under § 16-31-107. *Bennett* v. *State*, 308 Ark. 393, 825 S.W.2d 560 (1992).

### 4. Admissibility of photograph

Zinger and Risher contend the Trial Court erred by allowing as evidence State's Exhibit 59 which was a photograph of the victim taken during the autopsy showing the location and direction of the stab wounds. Dr. Hnilica had inserted wooden probes into the stab wounds to show that all the wounds except one were inflicted from an upward direction at the same angle. She testified the fact that the wounds came from the same angle indicated they were rapidly inflicted. From the angle of the wounds, Dr. Hnilica opined that a right handed person inflicted the injuries from behind the victim. The admissibility of photographs rests within the sound discretion of the trial court, and its decision will not be reversed without a showing of clear abuse of discretion. *Crow* v. *State*, 306 Ark. 411, 814 S.W.2d 909 (1991). Even inflammatory photographs are admissible if they tend to shed light on an issue, if they are useful to enable a witness to better describe the objects portrayed, or if they better enable the jury to understand the testimony. *See Berry* v. *State*, 290 Ark. 223, 718 S.W.2d 447 (1986).

■ We cannot say the Trial Court clearly abused its discretion by allowing the photograph into evidence. The photographs assisted Dr. Hnilica's testimony and helped the jury understand what she was saying.

### 5. Similar crime

The Trial Court refused to allow Officer Jimmy Morgan to testify about a similar murder which occurred in Cullen, Louisiana, approximately thirty miles from Magnolia. Zinger and Risher wanted to use the testimony to convince the jury that the person who committed the crime in Louisiana might also have murdered Holley.

Proffered testimony indicated the Louisiana victim had been beaten and stabbed several times and left in a position similar to that of Holley. There was also evidence of an attempted clean-up after the Louisiana incident and that the victim and the assailant knew each other and that it was a drug-related offense. The murder weapons used in Louisiana, a hammer and pair of scissors, were found at the scene of the crime.

To address this issue, we must consider under what circumstances evidence incriminating others is relevant to prove a defendant did not commit the crime charged. In *Killian* v. *State*, 184 Ark. 239, 42 S.W.2d 12 (1931), and *West* v. *State*, 255 Ark. 668, 501 S.W.2d 771 (1973), the defendants attempted to introduce testimony that other parties had been charged with the offense for which they were being tried. In each case, we upheld the Trial Court's refusal to allow the testimony because there was no evidence showing the other party was guilty.

■ Addressing this precise issue, the Supreme Court of North Carolina stated:

> A defendant may introduce evidence tending to show that someone other than the defendant committed the crime charged, but such evidence is inadmissible unless it points directly to the guilt of the third party. Evidence which does no more than create an inference or conjecture as to another's guilt is inadmissible.

*State* v. *Wilson*, 367 S.E.2d 589 (N.C. 1988). The Supreme Court of California has recognized that a defendant as the right

to present evidence of third party culpability but stated:

> [T]he rule does not require that any evidence, however remote, must be admitted to show a third party's possible culpability . . . [E]vidence of mere motive or opportunity to commit the crime in another person, without more, will not suffice to raise a reasonable doubt about a defendant's guilt: there must be direct or circumstantial evidence linking the third person to the actual perpetration of the crime.

*People* v. *Kaurish*, 802 P.2d 278 (Cal. 1990).

■ Although there are some similarities between the crimes committed in Louisiana and Arkansas, there was no evidence presented connecting the Louisiana suspect to the Holley murder. The Trial Court was not even given the name of the Louisiana suspect or whether he or she had any connection to Holley. There was neither direct nor circumstantial evidence connecting the Louisiana perpetrator to the Arkansas crime, other than a few similarities found in the two crime scenes, and we cannot conclude the Trial Court abused his discretion in refusing to allow the evidence to be admitted.

Affirmed.