

# ARKANSAS COURT OF APPEALS

DIVISION II
**No.** CR-12-913

| | |
|---|---|
| | **Opinion Delivered** SEPTEMBER 18, 2013 |
| MAURICE COSEN | APPEAL FROM THE JEFFERSON |
| APPELLANT | COUNTY CIRCUIT COURT [NO. CR-11-140-5] |
| V. | |
| | HONORABLE JODI RAINES DENNIS, JUDGE |
| STATE OF ARKANSAS | |
| APPELLEE | AFFIRMED |

## DAVID M. GLOVER, Judge

Maurice Cosen was tried by a jury and found guilty of two counts of aggravated assault and two counts of terroristic threatening. The charges arose from a shooting incident outside a club called Three Gables in the early morning hours of March 19, 2011. Cosen was sentenced to concurrent sentences totaling fifteen years. As his sole point of appeal, he contends that the trial court abused its discretion in excluding ballistic evidence, which he argues implicated a third party even though it did not exclude Cosen. We affirm.

### Background

There is no challenge to the sufficiency of the evidence in this case. Although there was conflicting testimony about whether Cosen was inside or outside of the club on the night in question, the jury clearly believed the witnesses who placed him outside of



the club, in the parking lot, shooting a gun. The sole issue relates to an evidentiary ruling by the trial court before the trial began.

In a pretrial oral motion, the State asked the trial court to prohibit the defense from introducing any evidence related to shell casings, and related ballistic evidence, retrieved from Three Gables during a subsequent crime-scene investigation of a shooting that occurred at that location approximately three weeks after the incident at issue here. The State acknowledged that the shell casings retrieved from the later shooting matched those retrieved on March 19 in the investigation of the instant case. Defense counsel contended that the gun and shell casings were not connected to Cosen; that they belonged to a man named Benny Johnson. The State argued that the evidence was not exculpatory, contending that just because others had the gun did not exclude Cosen from having it on the night in question, and that unless Cosen was trying to blame Benny Johnson, the evidence should not be admitted where there was no evidence that another party was guilty. Cosen's position was that the State had not been able to tie the gun to him and that evidence tying it to Benny Johnson and a shooting three weeks later at the same location should be allowed. Cosen argued that the instant case was distinguishable from *Zinger v. State*, 313 Ark. 70, 852 S.W.2d 320 (1993), that here "we do have the casings," and "the gun in the hand of another individual." At the close of these arguments, the trial court stated: "If they take the stand and say they saw Benny Johnson there that night . . . But, it's going to have to get linked that this other person actually committed this crime.

It can't be just an inference. We are not going to mention in opening statements anything about the shell casings matching."

During the actual trial, the State presented Cathy Ruhl, a crime-scene technician for the Pine Bluff Police Department who responded to the March 19 shooting incident at Three Gables. She testified about what she found upon arriving at the scene, including five expended cartridges that the lab report showed were fired from the same weapon. The report was introduced without defense objection.

On cross-examination, the State began objecting before defense counsel completed its first question, which, during the bench conference that followed, counsel stated was going to be: "Where did she ever associate those cartridges with any gun associated with this defendant?" The trial court responded, "You can do that, of course." Defense counsel then stated, "Judge, I think I'm really entitled to ask that next question: And, did she ever associate it with anyone?" The following colloquy then occurred among defense counsel, the prosecutor, and the trial court:

| | |
|---|---|
| THE COURT: | We didn't finish arguing that, [defense counsel]. |
| [DEFENSE COUNSEL]: | Okay. |
| [PROSECUTOR]: | I thought that he had conceded that he was not — |
| THE COURT: | You said you gave that up. If you are wanting to change that, we need to go back and — |
| [DEFENSE COUNSEL]: | Okay. Well, I will just ask that question right now. |
| THE COURT: | No. I'm happy to do that. |

3

SLIP OPINION

[DEFENSE COUNSEL]:          Okay.  No.  No.

THE COURT:                          Whatever—okay.

Defense counsel asked Ms. Ruhl, "Did you ever have an occasion to associate those cartridges—the .38 or the .45, either one of them—with any gun that was associated with this defendant?"  Ruhl responded, "We didn't find a weapon at the scene."  Defense counsel stated that was not his question.  The State objected.  Defense counsel asked Ruhl, "Did you ever have an occasion to associate those cartridges with any gun that was ever—."  The prosecutor asked to approach the bench and, at the bench, contended that Ruhl did not understand the question and was afraid to say what she knew she was not supposed to say.  The following colloquy occurred at that point:

THE COURT:                          Well, she—my information is that she—there's no—there's nothing linking this—those things to this man.  Well, then why wouldn't her answer be no?

[DEFENSE COUNSEL]:          That's what I mean.

[PROSECUTOR]:                     Well, I mean—I think if she—if she's understanding the question—I mean, this is all designed to just make it look bad, but I just don't want her to say, Yes, it was associated with another case where these shell casings match.  I mean that is an association.

THE COURT:                          Hopefully, she will listen to the question and answer the question asked.

[PROSECUTOR]:                     But there is an association.

THE COURT:                          That's not what he asked though.  Not with this defendant.

[DEFENSE COUNSEL]:          I didn't ask that.

4

SLIP OPINION

[PROSECUTOR]:  Well—

THE COURT:  That's my understanding.

[PROSECUTOR]:  Okay.

The bench conference concluded and defense counsel asked Ruhl, "Did you ever associate any of those cartridges that were found with any weapon or gun that was associated with this defendant?" Ruhl responded, "No." Ruhl was then excused, and the State rested its case.

*Discussion*

We first address the State's contention that Cosen's point of appeal was not properly preserved and cannot be addressed in this appeal because Cosen: 1) failed to proffer evidence placing the gun in Johnson's possession at any time and at any place; 2) failed to obtain a clear ruling from the trial court; and 3) abandoned his initial objection to exclusion of the evidence. We disagree. The trial court's ruling was clear—the evidence was not coming in unless Cosen could somehow link Johnson to the March 19 crime. Moreover, there was not a clear abandonment of the issue; rather, Cosen abandoned pursuing that line of questioning because he could not provide the link upon which the trial court conditioned admission of the evidence. The issue presented was adequately preserved for our review.

The trial court allowed Ruhl to testify that no gun was found in the March 19 incident at issue here and that no evidence was found that associated the cartridges that *were* found to Cosen. The evidence that the trial court excluded was certain ballistic

5

SLIP OPINION

evidence. The evidence established that a second set of cartridges and a gun, which were part of a later crime-scene investigation of another shooting that took place at the same location three weeks after the March 19 incident, were connected to the cartridges found on March 19; that is, the cartridges from both incidents were tied to one gun that was found to be in the possession of a man named Benny Johnson following the subsequent shooting.

We review a trial court's decision to admit or exclude evidence under an abuse of discretion standard. *Buford v. State*, 2010 Ark. App. 638. We find no abuse of discretion here. In *Zinger v. State*, 313 Ark. 70, 852 S.W.2d 320 (1993), our supreme court reviewed a lower court ruling that excluded evidence about a similar murder that occurred in Louisiana, about thirty miles from the crime scene at issue in that case. Our supreme court affirmed the trial court's ruling, explaining:

> The trial court refused to allow Officer Jimmy Morgan to testify about a similar murder which occurred in Cullen, Louisiana, approximately thirty miles from Magnolia. Zinger and Risher wanted to use the testimony to convince the jury that the person who committed the crime in Louisiana might also have murdered Holley.
>
> Proffered testimony indicated the Louisiana victim had been beaten and stabbed several times and left in a position similar to that of Holley. There was also evidence of an attempted clean-up after the Louisiana incident and that the victim and the assailant knew each other and that it was a drug-related offense. The murder weapons used in Louisiana, a hammer and pair of scissors, were found at the scene of the crime.
>
> To address this issue, we must consider under what circumstances evidence incriminating others is relevant to prove a defendant did not commit the crime charged. In *Killian v. State*, 184 Ark. 239, 42 S.W.2d 12 (1931), and *West v. State*, 255 Ark. 668, 501 S.W.2d 771 (1973), the defendants attempted to introduce

SLIP OPINION

testimony that other parties had been charged with the offense for which they were being tried. In each case, we upheld the trial court's refusal to allow the testimony because there was no evidence showing the other party was guilty.

Addressing this precise issue, the Supreme Court of North Carolina stated:

A defendant may introduce evidence tending to show that someone other than the defendant committed the crime charged, but such evidence is inadmissible unless it points directly to the guilt of the third party. Evidence which does no more than create an inference or conjecture as to another's guilt is inadmissible.

*State v. Wilson*, 367 S.E.2d 589 (N.C. 1988). The Supreme Court of California has recognized that a defendant has the right to present evidence of third party culpability but stated:

[T]he rule does not require that any evidence, however remote, must be admitted to show a third party's possible culpability . . . [E]vidence of mere motive or opportunity to commit the crime in another person, without more, will not suffice to raise a reasonable doubt about a defendant's guilt: there must be direct or circumstantial evidence linking the third person to the actual perpetration of the crime.

*People v. Kaurish*, 802 P.2d 278 (Cal. 1990).

Although there are some similarities between the crimes committed in Louisiana and Arkansas, there was no evidence presented connecting the Louisiana suspect to the Holley murder. The trial court was not even given the name of the Louisiana suspect or whether he or she had any connection to Holley. There was neither direct nor circumstantial evidence connecting the Louisiana perpetrator to the Arkansas crime, other than a few similarities found in the two crime scenes, and we cannot conclude the trial court abused his discretion in refusing to allow the evidence to be admitted.

313 Ark. at 75–76, 852 S.W.2d at 323.

*Birts v. State*, 2012 Ark. 348, and *Armstrong v. State*, 373 Ark. 347, 284 S.W.3d 1 (2008), were both decided after the United States Supreme Court case of *Holmes v. South Carolina*, 547 U.S. 319 (2006), and upheld the *Zinger* analysis.

7

Here, Cosen presented nothing to connect Benny Johnson to the March 19 incident. There was no testimony that he was even present at the club or on the parking lot that night. The fact that Benny Johnson had the gun in his possession three weeks later in a subsequent shooting, without more to connect Benny Johnson with the March 19 incident, does not convince us that the trial court abused its discretion in refusing to allow this evidence to be admitted in Cosen's trial.

Affirmed.

GLADWIN, C.J., and WYNNE, J., agree.

*Morehead Law Firm*, by: *Robert F. Morehead*, for appellant.

*Dustin McDaniel*, Att'y Gen., by: *Eileen W. Harrison*, Ass't Att'y Gen., for appellee.