

# ARKANSAS COURT OF APPEALS

DIVISION I
No. CR–13–286

| | | |
|---|---|---|
| HENRY HARMON | | **Opinion Delivered** JANUARY 29, 2014 |
| | APPELLANT | |
| V. | | APPEAL FROM THE PULASKI COUNTY CIRCUIT COURT, FIRST DIVISION [NO. CR2012-515] |
| STATE OF ARKANSAS | | |
| | APPELLEE | HONORABLE LEON JOHNSON, JUDGE |
| | | AFFIRMED |

---

**BILL H. WALMSLEY, Judge**

A Pulaski County jury convicted appellant Henry Harmon of first–degree murder, two counts of aggravated robbery, and aggravated assault. Considering both his status as a habitual offender and his use of a firearm in committing the offenses, Harmon was sentenced to an aggregate term of 105 years' imprisonment. Harmon argues that the trial court abused its discretion in granting the State's motion in limine regarding DNA evidence. We affirm.

Harmon does not challenge the sufficiency of the evidence, so only a brief recitation of the facts is necessary. In the early morning hours on January 5, 2012, there was evidence that Harmon went to the Heritage House Inn, kicked down the door of a motel room, and demanded money from the occupants, John Williams and Christine Dyer. The State offered proof that Harmon shot and killed Williams and then fled. The evidence showed that Harmon led police officers on a high-speed chase and eventually eluded them. The police

were later dispatched to Arkansas Children's Hospital, where there was evidence that Harmon had abandoned his vehicle, which was still hot to the touch. Police officers and hospital security personnel located several articles of clothing, including a leather jacket, near the vehicle. A pistol, later determined to be the murder weapon, was found in the pocket of the leather jacket.

At trial, Jennifer Beaty, a forensic DNA examiner, testified that she collected known DNA samples from Harmon and Williams and then compared those to the evidence collected by police. Beaty found Williams's blood on the Colt .380 Mustang PocketLite pistol, leather jacket, sweatshirt, glove, and bandana. Harmon's DNA was found on the sweatshirt and bandana. On cross-examination, Beaty explained that, with respect to the sweatshirt and bandana, there was both a major component and a minor component to the DNA.

Because the trial court had granted the State's motion in limine to exclude testimony from Beaty that there was more than one contributor to the DNA profiles, Harmon proffered her testimony. Beaty testified that there was a DNA mixture on the sweatshirt and bandana. According to Beaty, when there are major and minor components, there is DNA from at least two people contributing to the profile. The major components, or stronger signals, belonged to Harmon, but there were minor components present, meaning that other unknown individuals had contributed a smaller amount of DNA. Beaty testified that the minor components were inconclusive for comparative purposes.

While Harmon admitted that the sweatshirt was his, he denied owning the bandana, explaining that it belonged to previous owners of the vehicle. Harmon testified that a day or

two prior to the murder, he had loaned his vehicle to a prostitute so that she could take her cousin somewhere and that, on the night of the murder, he had loaned his vehicle to Cedric Johnson because Johnson was interested in buying the vehicle.

On appeal, Harmon argues that, given that the DNA evidence bolstered the State's case, the presence of DNA from other individuals was highly relevant. According to Harmon, while the proffered testimony could not conclusively identify another party, it could have established that someone else had worn the articles of clothing and corroborated his testimony that he had loaned his car to others.

It is well settled that a trial court is vested with wide discretion in admitting evidence, and an appellate court will not reverse in the absence of an abuse of that discretion. *Johnson v. State*, 342 Ark. 186, 27 S.W.3d 405 (2000). In *Zinger v. State*, 313 Ark. 70, 852 S.W.2d 320 (1993), the Arkansas Supreme Court set forth the standard for admissibility of evidence tending to incriminate other persons:

> A defendant may introduce evidence tending to show that someone other than the defendant committed the crime charged, but such evidence is inadmissible unless it points directly to the guilt of the third party. Evidence which does no more than create an inference or conjecture as to another's guilt is inadmissible.

*Zinger*, 313 Ark. at 75, 852 S.W.2d at 323 (quoting *State v. Wilson*, 367 S.E.2d 589 (N.C. 1988)). The court went on to state:

> [T]he rule does not require that any evidence, however remote, must be admitted to show a third party's possible culpability . . . [E]vidence of mere motive or opportunity to commit the crime in another person, without more, will not suffice to raise a reasonable doubt about a defendant's guilt; there must be direct or circumstantial evidence linking the third person to the actual perpetration of the crime.

*Zinger*, 313 Ark. at 76, 852 S.W.2d at 323 (quoting *People v. Kaurish*, 802 P.2d 278 (Cal.

SLIP OPINION

1990)).

Beaty's proffered testimony, at most, created only an inference or conjecture as to another individual's guilt. Beaty testified that the minor components of the DNA were inconclusive, meaning that she could not include or exclude an individual from contributing to the profile. Although Harmon named a specific individual and suggested that he had the opportunity to commit the crimes, there was no direct or circumstantial evidence connecting Johnson to the actual perpetration of the crimes. We therefore hold that the trial court did not abuse its discretion in refusing to admit Beaty's proffered testimony.

Affirmed.

PITTMAN and HIXSON, JJ., agree.

*Robert M. "Robby" Golden*, for appellant.

*Dustin McDaniel*, Att'y Gen., by: *Kent Holt*, Ass't Att'y Gen., for appellee.