

# SUPREME COURT OF ARKANSAS

No. CR-14-145

| | | |
|---|---|---|
| HENRY HARMON | APPELLANT | **Opinion Delivered** September 25, 2014 |
| V. | | APPEAL FROM THE PULASKI COUNTY CIRCUIT COURT, FIRST DIVISION [NO. CR2012-515] |
| STATE OF ARKANSAS | APPELLEE | HONORABLE LEON JOHNSON, JUDGE |
| | | REVERSED AND REMANDED; COURT OF APPEALS' OPINION VACATED. |

**CLIFF HOOFMAN, Associate Justice**

Appellant Henry Harmon appeals from his convictions for first-degree murder, two counts of aggravated robbery, and aggravated assault. Harmon's sentences were enhanced because he used a firearm during the commission of the offenses and because he is classified as a habitual offender, and he received an aggregate sentence of 105 years' imprisonment. For his sole point on appeal, Harmon argues that the circuit court abused its discretion in granting the State's motion in limine seeking to exclude DNA evidence. Our jurisdiction is pursuant to Ark. Sup. Ct. R. 1-2(e) (2014), as we granted Harmon's petition for review of the decision of the Arkansas Court of Appeals affirming his convictions. *Harmon v. State*, 2014 Ark. App. 70. We reverse and remand to the circuit court and vacate the court of appeals' opinion.

Harmon was charged with capital murder, aggravated robbery, and aggravated assault

in connection with the robbery of Christine Dyer and John Williams on January 5, 2012, at the Heritage House Motel in Little Rock. Williams was shot and killed during the course of the robbery. Although Harmon does not challenge the sufficiency of the evidence supporting his convictions, a brief review of the facts and the evidence presented at trial is helpful in understanding the issue presented on appeal.

Dyer testified that, at around midnight on January 5, 2012, she and her fiancé, Williams, had just turned in for the night in their room at the Heritage House Motel when someone knocked on their door, kicked it in, and then ran into the room screaming, "Where's the money?" The assailant fired several shots as he entered the room, and Williams was fatally shot in the chest. The assailant proceeded to search the room for money, and Dyer managed to escape from the room as shots were being fired at her. Dyer hid behind a bush and saw the assailant leave the room and get into the driver's side of a vehicle that Dyer described as a brown, older model 4-door sedan similar to an El Dorado. When police officers began to follow a vehicle meeting that description, the driver led police on a high-speed chase. The officers eventually lost sight of the vehicle in the vicinity of Wright Avenue and Marshall Street; however, shortly afterward, police were notified that the vehicle had been abandoned in a parking lot at Arkansas Children's Hospital. The hood was still hot to the touch when police arrived, and several items of discarded clothing, including a jacket, a sweatshirt, a glove, and a bandana were found near the fence on the playground. A loaded pistol, later determined to be the murder weapon, was found in a pocket of the jacket, along with a receipt with Harmon's name on it. Surveillance video from the hospital that shows

the vehicle pulling into the parking lot and a male and a female exiting the car and running toward the playground area near Marshall Street was admitted into evidence.

Although Dyer was unable to identify Harmon in a photo line-up, Nikita Smith testified that she was with Harmon on the night of January 5, 2012. Smith stated that she and Harmon had gotten high and then drove to the Heritage House to obtain more drugs. Smith stayed in the vehicle but stated that she saw Harmon, who was wearing blue jeans, a black hoodie, and a black coat, put a bandana on his head and approach one of the motel rooms. Smith then heard Harmon kick in the door, and several shots were fired. Smith next witnessed a woman run out of the room yelling for help, and Harmon returned to the vehicle carrying a pistol. When Smith asked Harmon what had happened, he stated that he had "shot that man." Harmon then fled from the scene and from police until he stopped the vehicle in the Children's Hospital parking lot. According to Smith, Harmon told her to run, and she saw him abandon several items of clothing and throw his gun over a gate. The two then split up and fled from the scene. Although Harmon warned Smith not to tell anyone what had happened, Smith told her cousin, who reported it to the police.

Jennifer Beatty, a forensic DNA examiner, testified that she had collected DNA samples from Harmon and the victim. She then tested the items of clothing that had been discarded near the hospital. Beatty stated that Williams's blood was found on the pistol, jacket, sweatshirt, glove, and bandana. In addition, Beatty testified that Harmon's blood was found on the sweatshirt and bandana. On cross-examination, Beatty further explained that there were major and minor contributors to the DNA found on the sweatshirt and the



bandana.

Prior to Beatty's testimony at trial, the State had moved to exclude from evidence that portion of the DNA results that indicated the presence of more than one contributor to the DNA profiles on the sweatshirt and the bandana. The State argued that this evidence raised only a speculative inference of third-party guilt and was inadmissible pursuant to our holdings in *Zinger v. State*, 313 Ark. 70, 852 S.W.2d 320 (1993), and *Birts v. State*, 2012 Ark. 348. Defense counsel asserted that these cases were distinguishable from the present case, as Harmon was seeking to challenge the credibility of the DNA evidence introduced by the State that linked Harmon with the commission of the crimes, not to introduce independent evidence of third-party guilt. The defense also argued that the evidence was relevant to corroborate Harmon's defense that he had let someone else borrow his vehicle on the night of January 5, 2012, and that he did not commit the crimes with which he was charged.

The circuit court granted the State's motion in limine to exclude the evidence; however, over an objection by the State, the court did allow the defense to question Beatty as to whether there was a major and a minor contributor to the DNA profiles. Harmon then proffered additional testimony by Beatty that there was DNA from at least two other persons on the sweatshirt and the bandana, although Harmon was the major contributor. Beatty also testified that these minor components were inconclusive for comparative purposes. Following this proffer, defense counsel requested that the circuit court reconsider its ruling on the motion in limine, which the court declined to do.

During the defense's case, Harmon admitted that the vehicle found at Children's

Hospital was his, but he testified that he had loaned the car to Cedric Johnson on the night of the murder because Johnson was interested in buying it. Harmon also admitted that he owned the sweatshirt. He claimed that the bandana was not his and that it was left in the car by a previous owner, although he did testify that he had used the bandana to wipe his sweat. Harmon also explained that his blood on the receipts in the jacket and the car was a result of cutting his hand when working on his car approximately one week prior to the crimes. Harmon denied committing the crimes or being present at Heritage House on the night of the murder and stated that Smith had lied during her testimony. Harmon also presented testimony from someone who claimed that Harmon was present at a friend's house during the time of the murder.

The jury convicted Harmon of first-degree murder, aggravated robbery, and aggravated assault. He was also found guilty of using a firearm during the commission of the crimes. He was sentenced as a habitual offender to a total of 105 years' imprisonment. Harmon appealed his convictions and challenged the circuit court's ruling on the motion in limine. The Arkansas Court of Appeals affirmed in *Harmon v. State*, *supra*, and this court granted Harmon's petition for review. When we grant a petition for review, we treat the appeal as if it had been originally filed in this court. *Fowler v. State*, 339 Ark. 207, 5 S.W.3d 10 (1999).

Harmon's sole point on appeal is that the circuit court erred in granting the State's motion in limine to exclude the evidence that there was DNA from more than one individual

on several pieces of evidence.[1]  Circuit courts have broad discretion in deciding evidentiary issues, and their rulings on the admissibility of evidence are not reversed on appeal absent an abuse of discretion.  *Laswell v. State*, 2012 Ark. 201, 404 S.W.3d 818.

In *Zinger*, *supra*, we discussed the standard for admissibility of evidence incriminating third persons and held that

> [a] defendant may introduce evidence tending to show that someone other than the defendant committed the crime charged, but such evidence is inadmissible unless it points directly to the guilt of the third party. Evidence which does no more than create an inference or conjecture as to another's guilt is inadmissible.

313 Ark. at 75, 852 S.W.2d at 323 (quoting *State v. Wilson*, 367 S.E.2d 589 (N.C. 1988)).

We further stated,

. . .

> [T]he rule does not require that any evidence, however remote, must be admitted to show a third party's possible culpability . . . [E]vidence of mere motive or opportunity to commit the crime in another person, without more, will not suffice to raise a reasonable doubt about a defendant's guilt: there must be direct or circumstantial evidence linking the third person to the actual perpetration of the crime.

*Id.* at 76, 852 S.W.2d at 323 (quoting *People v. Kaurish*, 802 P.2d 278 (Cal. 1990)).  Thus, in *Zinger*, we affirmed the trial court's exclusion of evidence proffered by the defendant regarding a similar murder in Louisiana, holding that there was no evidence to connect the Louisiana suspect to the murder in that case other than a few similarities in the crime scenes.

In *Birts*, *supra*, we again affirmed the trial court's exclusion of evidence where the

---

[1]Harmon also argued at trial that the circuit court's ruling violated his constitutional right to present a complete defense; however, he has abandoned that argument on appeal. *Williams v. State*, 2011 Ark. 489, 385 S.W.3d 228.

defendant sought to introduce trace-DNA and fingerprint evidence from unknown contributors that was found at the crime scene and in the victim's residence. We held that the evidence proffered by the defendant was too speculative because it related only to an unnamed third party or parties, rather than to a particular third party, and that it would require the jury to engage in conjecture to make the inference that the unknown contributor of the DNA or fingerprints committed the murders, as there was no evidence to directly connect the unknown third person to the crime. *Id.*

In the present case, Harmon argues that the evidence he sought to introduce through cross-examination of Beatty is distinguishable from the evidence excluded in *Zinger* and *Birts* for at least two reasons. First, Harmon asserts that the DNA evidence at issue in this case was actually introduced by the State in its case-in-chief and that he only desired to fully examine that evidence and question it in court. Harmon argues that the circuit court's ruling here essentially allowed the State to "have its cake and eat it too," because it was permitted to both introduce incriminating DNA evidence against him and have that same evidence shielded from cross-examination by the defense. Second, unlike in both *Zinger* and *Birts*, Harmon contends that there was a direct link between the third-party-guilt evidence proffered in this case and the charged crimes. Harmon's defense, as established through his direct testimony at trial, was that he allowed a specific individual, Cedric Johnson, to borrow his car on the night of the murder. Thus, he argues that his proffered evidence that there was DNA from at least two other individuals on articles of clothing that were found near the car and that also contained the victim's blood corroborated his defense and was highly relevant in this case.

7

Harmon further asserts that testimony about the minor components of DNA found on the items would not have misled the jury or caused confusion.

According to Ark. R. Evid. 401 (2014), relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." However, under Ark. R. Evid. 403 (2014), relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury. The standard for admission of incriminating evidence against a third person, as we set forth in *Zinger*, is merely an application of these rules to a specific type of evidence.

We agree with Harmon that the facts in this case are distinguishable from those in *Zinger* and *Birts*. The evidence that Harmon sought to admit challenged the credibility of evidence introduced by the State to connect him to the murder. Furthermore, unlike in *Zinger* or in *Birts*, there was a direct link between the DNA evidence proffered by Harmon and the crimes at issue, and the evidence also corroborated Harmon's testimony at trial that a particular third party was responsible for the crimes. As Harmon asserts, Beatty's testimony about the DNA mixture was highly probative to his defense, and it would not have been unduly confusing or misleading to the jury. Under these circumstances, we agree that the circuit court abused its discretion in excluding this evidence.

In its supplemental brief on review, the State contends that the circuit court's ruling permitted Harmon to question the credibility of the DNA sample introduced by the State and

that "[t]he proffer submitted by the appellant appears to go to the questioning of the sample itself (something the trial court agreed was permissible) . . . ." Thus, the State faults Harmon for not further attempting to have this proffered testimony admitted. However, Harmon did request that the circuit court reconsider its ruling after proffering Beatty's additional testimony, and the court stated that "the proffer actually strengthens the Motion in Limine, and the Motion in Limine is going to stand." The State also argues that Harmon was entitled pursuant to the parameters of the circuit court's ruling to argue in closing that the identifiable DNA belonged to another person who wore the clothing. To the contrary, the circuit court was clear in its ruling that Harmon was allowed to ask Beatty only if there were major and minor components to the DNA profiles and that he was not allowed "to delve farther in that it could be somebody else" or to "argue that at closing." Furthermore, the State asserts that Harmon should have renewed his objection following his testimony at trial that a third party had access to the victim at the time of the offenses. However, the State cites no authority for this proposition, and this court has previously held that a defendant is not required to renew a motion in limine in order to pursue the issue on appeal. *Neal v. State*, 320 Ark. 489, 898 S.W.2d 440 (1995). Because we hold that the circuit court abused its discretion in granting the State's motion in limine to exclude the DNA evidence, we reverse and remand.

Reversed and remanded; court of appeals' opinion vacated.

HANNAH, C.J., and CORBIN and DANIELSON, JJ., dissent.

**PAUL E. DANIELSON, Justice, dissenting.** Because I cannot say that the circuit court abused its discretion in granting the State's motion in limine, I respectfully dissent.

9

The testimony that Harmon sought to be admitted simply did not point directly to the guilt of a third party. The mere fact that an unknown contributor's DNA was on Harmon's sweatshirt and the bandana found outside of Harmon's car goes to show only that, at some point in time, another unknown person came into contact with those articles of clothing. It in no way links anyone, known or unknown, to the actual perpetration of the crime.

The rule in *Zinger* that this court applies requires that "*the evidence a defendant wishes to admit . . .* sufficiently connects the other person to the *crime.*" *Armstrong v. State*, 373 Ark. 347, 353, 284 S.W.3d 1, 5 (2008) (emphasis added). Our decision in *Birts v. State*, 2012 Ark. 348, is directly on point. In *Birts*, Birts had sought to have admitted certain fingerprint and trace-DNA evidence of unknown persons that was found at the crime scene and at the residence of one of the victims. The circuit court excluded the evidence, and we affirmed that decision, observing that "regardless of the location at which the proffered evidence was collected, there was nothing to connect *that* evidence directly with the perpetration of any of the three murders being tried." 2014 Ark. 348, at 7–8 (emphasis added). We further stated:

> [T]he fact that unknown trace DNA and fingerprints were found at the crime scene and at the victim's home tends to show nothing other than that some unknown third person was present in those two places at some unknown time—it does not directly connect the unknown third person with the commission of any of these three murders. And a direct connection with the perpetration of the crime on trial is what is required for admissibility under the *Zinger* test.

*Id.* at 8.

10

Here, Harmon's testimony that he had loaned his car to another has no bearing on a determination of whether the DNA testimony was admissible under *Zinger*. The evidence sought to be admitted is the evidence that must be evaluated; it is that evidence that is inadmissible unless it points directly to the guilt of the third party. Because there was nothing to directly connect the DNA evidence that Harmon wished to have admitted with the perpetration of the crimes being tried, I would affirm the circuit court's decision granting the State's motion in limine.

HANNAH, C.J., and CORBIN, J., join.

*Robert M. "Robby" Golden*, for appellant.

*Dustin McDaniel*, Att'y Gen., by: *Kent G. Holt*, Ass't Att'y Gen., for appellee.