Josephine Linker Hart, Justice, concurring. I write separately because, although this case must be affirmed, I am concerned that Dr. Conte may not have received a fair trial. I am most troubled by two points: the delay in bringing the case to trial and the circuit court’s prohibiting Dr. Conte from presenting a “Zinged defense. However, as argued, these points do not compel this court to reverse this case. First, Conte asserted that the death of his alibi witness, Pringle, constituted prejudicial delay that warranted the dismissal of the information. He noted that in Scott v. State, 263 Ark. 669, 566 S.W.2d 737 (1978), this court held that prejudicial delay in bringing charges can violate a defendant’s right to due process, and the charges should be dismissed unless the State comes forward with a “satisfactory reason” for the delay. He asserts that here, the circuit |3(icourt “essentially signed off on Barrett (the investigating officer) shopping the case to three different prosecutors.” Conte notes that no additional evidence was found prior to bringing the charges. He contends that Hiland’s decision to bring the charges was related to his campaign for prosecutor. Conte points to the fact that Elliot’s daughter, Ashley Waldron, appeared in a televised campaign commercial for Hiland, and although the circuit court dismissed it as not relevant to bias, Conte contends that it violated fundamental fairness. The fact that Hiland chose to bring the case, when his predecessors decided against it, cannot support reversal of this case. That situation can be ascribed to Hiland’s being more aggressive than the men who preceded him in office. The problem with this argument is that Dr. Conte’s only claim of prejudice was the death of a single alibi witness, Pringle, whose account of Dr. Conte’s whereabouts fell far short of proving that Dr. Conte was not at the crime scene. Moreover, Prin-gle’s statements regarding Dr. Conte’s location could have been introduced through other witnesses. In my view, the prejudice lay in the fact that over the nine years between the commission of the murders and the filing of the- charges against Dr. Conte, the statements of other potential suspects simply disappeared from the police files. This “missing” evidence includes the taped statement made by alleged bookmaker Raymond Merrill, who broke Carter Elliott’s jaw before the murder; Joe Garrison, who allegedly engaged in high-stakes gambling with Elliott and to whom Elliott owed $50,000; Danny Cook, a man who had confronted Elliott about having an affair with his wife; and Dan West, an employee of Elliott’s who was terminated a week before the murders and had allegedly threatened to kill Elliott if |37he were fired. Also, Jackie Dumaglosky, the man who had reported West’s, threat could not be located and was believed to have moved out of state. The spoliation of potential exculpatory evidence — if argued — could have made a more compelling argument. This is particularly so in this case, because no evidence, save the testimony of two jailhouse snitches, put Dr. Conte anywhere near the crime scene at the time of the murders. The second point that causes me significant concern was how Dr. Conte’s appellate counsel challenged the circuit court’s denial of his Zinger defense. Prior to trial, the State filed a motion to preclude Dr. Conte from inferring that others had committed the murders. They sought to exclude testimony about Danny Cook, Raymond Merrill, Joe Garrison, and Dan West. The State prevailed on its motion On appeal, Dr. Conte argues that the motion in limine prevented him from being able to present a complete defense. However, he undercuts this argument by asserting that the Zinger standard that the circuit court relied on was “too narrow.” In Zinger v. State, 313 Ark. 70, 852 S.W.2d 320, the supreme court held that the standard for admissibility of evidence tending to incriminate other persons in the crime being charged is as follows: A defendant may introduce evidence tending to show that someone other than the defendant committed the crime charged, but such evidence is inadmissible unless it points directly to the guilt of the third party. Evidence which does no more than create an inference or conjecture as to another’s guilt is inadmissible. Zinger, 313 Ark. at 75-76, 852 S.W.2d at 323 (quoting State v. Wilson, 322 N.C. 117, 367 S.E.2d 589 (1988)). This argument was inefficacious because the Zinger rule was expressly upheld by the Supreme Court of the United States in Holmes v. South Carolina, 547 U.S. 319, 126 S.Ct. 1727, 164 L.Ed.2d 503 (2006). Essentially, Dr. Conte’s appellate counsel was conceding that the circuit court’s ruling lasfollowed the binding precedent of this court and of the Supreme Court of the United States. I note that the case before us did not present a typical Zinger situation in which the identity of the third person is unknown and completely speculative. Zinger involved proffered testimony concerning another crime of a similar nature that occurred after the appellant had been arrested for the crime he was being tried for, the implication being that the perpetrator of the subsequent crime committed both. Zingers closest progeny, Birts v. State, 2012 Ark. 348, 2012 WL 4471108, likewise involved a healthy dose of speculation about an unknown perpetrator. In Birts, the defendant wished to introduce forensic evidence contributed by an unknown person other than the defendant that was found in the victim’s apartment and vehicle. While it is true that Zinger seems to require an evidentiary link that points directly to the guilt of a third party, in State v. Harrison, 2012 Ark. 198, 404 S.W.3d 830, this court held that a direct link was established by a third party’s testimony. Likewise, in Harmon v. State, 2014 Ark. 391, 441 S.W.3d 891, testimony that a third person was in possession of Harmon’s car at the time of the murder established that direct link. I submit that Zinger is not the impediment to Dr. Conte prevailing on appeal, rather it is a case that purports to be Zinger’s progeny, Armstrong v. State, 366 Ark. 105, 233 S.W.3d 627 (2006). On appeal, the State cites Armstrong as authority for upholding the circuit court’s ruling. The Armstrong court stated: Armstrong also contends that the circuit court erroneously excluded evidence he wanted to present of controversies between Kim Waller and her sisters and the victim, including an audio tape which contained statements by the Waller sisters threatening to kill Dashunda Armstrong. He claims that the circuit court erroneously construed Zinger v. State, 313 Ark. 70, 852 S.W.2d 320 (1993), as requiring that evidence of another’s guilt could only be presented where it pointed directly to the |,pother perpetrator’s guilt. He asserts that he had the names of all three Waller sisters who had threatened his wife; records of the violent encounters between the women including a court case; records from the prosecutor’s office that showed mutual harassment between Mrs. Armstrong and Ms. Waller; and the presence of Kim Waller at the crime scene the night of the murder. He urges that the circuit court trammeled his Fourteenth Amendment right to due process and a fair trial by denying him the opportunity to have the jury decide whether the evidence of Mrs. Armstrong’s battles with the Waller sisters cast a reasonable doubt on the prosecution’s theory that he perpetrated the murders. [[Image here]] While Armstrong possessed a tape which contained the voices of several Waller sisters threatening Mrs. Armstrong and evidence that Armstrong’s wife and several of the Waller sisters had harassed one another, he presented no direct or circumstantial evidence which connected any of the Waller sisters to his wife’s death. As the State points out, two of the Waller sisters, Karen and Yolanda, whom their sister Kim identified as being the voices on the tape sought to be admitted by Armstrong, were in Forrest City the night of Dashunda Armstrong’s murder, according to Karen’s and Kim’s testimony presented to the circuit court. In addition, despite Kim Waller’s presence in the area of the crime scene the night of the victim’s death, Armstrong failed to connect her presence with the possibility of her guilt, especially when she testified that she was only in the area because she received a cellular telephone call from Armstrong to come pick him up. To be admissible, this court has held that there must be a sufficient connection between the evidence that a third party may have committed the crime and the possibility of another person’s guilt. See Echols v. State, 326 Ark. 917, 936 S.W.2d 509 (1996). While Armstrong claims that Zinger permits evidence of another’s connection to the crime, he is mistaken. The Zinger court was exceedingly clear that any evidence pertaining to the possibility of a third-party’s guilt in the crime charged must point directly to the guilt of the third party. See, e.g., Echols v. State, supra. Because the evidence pointed to by Armstrong does no more than create a suspicion or conjecture that the Waller sisters may have played a role in Dash-unda Armstrong’s death, the circuit court did not abuse its discretion in rejecting the evidence. Armstrong, 366 Ark. at 116-18, 233 S.W.3d at 636-37. In my view, Armstrong was wrongly decided. However, in Armstrong v. State, 373 Ark. 347, 284 S.W.3d 1 (2008), the Rule 37 case, far from retreating from the erroneous holding, 140this court compounded the error by declining to correct the mistake and held that the direct appeal comported with Zinger and thus with Holmes v. South Carolina, 547 U.S. 319, 126 S.Ct. 1727, 164 L.Ed.2d 503 (2006). I note that Holmes held that the exclusion of defense evidence of third-party guilt denied defendant a fair trial. It is a case that favors admission of this type of testimony. Armstrong stands Holmes on its head. Armstrong sanctions the very procedure, which was employed in the case before us, that Holmes found unconstitutional. This misstep in our Zinger jurisprudence was not challenged on appeal. While I am mindful that a circuit court has broad discretion on whether to admit or exclude evidence, that discretion does not extend to denying a defendant a fair trial.