The evidence implicating appellant in the crime included the discovery of an AR-15 rifle, .223 rounds, spent shell casings, and spare magazines at his home; security video footage showing appellant wearing camouflage at U-Pull-It on that Friday night at the time of the shootings and showing that he had his AR-15 with him; his statements to law enforcement denying being present on the night of the shootings; and the fact that, on Saturday morning before U-Pull-It opened, appellant crushed the vehicle with the bodies inside. The projectile recovered by the medical examiner could not be conclusively linked to appellant's rifle, but there was testimony that the shell casing recovered at the scene had been cycled through that rifle. In addition, Brock's cell phone was found in the vehicle with the bodies, but the battery was not located. There was testimony that the phone ceased all activity, *145 including receiving information and communicating with the cell towers (suggesting removal of the battery), at 8:00 a.m. on Saturday when appellant was at the salvage yard crushing cars. The State's theory of the case was that appellant, an operator and part owner in the family business, was tired of repeated break-ins and decided to hunt down the perpetrators himself. Appellant's defense was that he had not shot the victims. Although he was seen on surveillance video carrying a rifle, he sought to present evidence showing why other people had motives to harm the victims and why he was armed that night-due to the victims' ties to violent white-supremacist groups. At trial, the defense contended that appellant was at the salvage yard that night because it was raining, and he wanted to see the condition of the gravel that had just been brought in to deal with an erosion problem. He relied on the absence of DNA or other physical evidence connecting him to the shootings and pointed to the video footage showing patterns of moving lights that he argued showed the presence of other persons.
II. Points on Appeal
A. Zinger Evidence
Appellant argues that the circuit court's rulings excluding certain evidence were a misapplication of the doctrine of Zinger v. State , 313 Ark. 70, 852 S.W.2d 320 (1993), which governs admission of evidence of alternative perpetrators. Further, he argues that the rulings also violated his constitutional right to present a defense as guaranteed by the Sixth and Fourteenth Amendments of the United States Constitution and cognate state constitutional provisions of article 2, sections 8 and 10.
This court reviews the admission of evidence by the circuit court at trial using an abuse-of-discretion standard. Ellis v. State , 2012 Ark. 65, at 10, 386 S.W.3d 485, 490. The decision to admit or exclude evidence is within the sound discretion of the circuit court, and we will not reverse a court's decision regarding the admission of evidence absent a manifest abuse of discretion. Id. Appellant argues that the application of Zinger is a question of law to which a de novo standard of review should be applied, but we disagree. Consistent with our case law, we apply an abuse-of-discretion standard. See Harmon v. State , 2014 Ark. 391, 441 S.W.3d 891 (holding that the circuit court abused its discretion in granting the State's motion in limine to exclude the evidence that there was DNA from more than one individual on several pieces of evidence); Conte v. State , 2015 Ark. 220, 463 S.W.3d 686, (applying an abuse-of-discretion standard to Conte's Zinger argument).
In Zinger , supra , the appellants had been convicted of first-degree murder. At trial, they had attempted to introduce testimony regarding a similar crime that had occurred approximately thirty miles away, in Louisiana, for the purpose of convincing the jury that the person who committed that crime might also have committed the murder of which they had been accused. The circuit court refused to allow the evidence. On appeal, this court wrote:
To address this issue, we must consider under what circumstances evidence incriminating others is relevant to prove a defendant did not commit the crime charged....
Addressing this precise issue, the Supreme Court of North Carolina stated:
A defendant may introduce evidence tending to show that someone other than the defendant committed the crime charged, but such evidence is inadmissible unless it points directly to the guilt of the third party. Evidence *146 which does no more than create an inference or conjecture as to another's guilt is inadmissible.
State v. Wilson, 322 N.C. 117, 367 S.E.2d 589 (1988). The Supreme Court of California has recognized that a defendant has the right to present evidence of third party culpability but stated:
[T]he rule does not require that any evidence, however remote, must be admitted to show a third party's possible culpability ... [E]vidence of mere motive or opportunity to commit the crime in another person, without more, will not suffice to raise a reasonable doubt about a defendant's guilt: there must be direct or circumstantial evidence linking the third person to the actual perpetration of the crime.
People v. Kaurish , 52 Cal. 3d 648, 276 Cal. Rptr. 788, 802 P.2d 278 (1990).
Although there are some similarities between the crimes committed in Louisiana and Arkansas, there was no evidence presented connecting the Louisiana suspect to the Holley murder. The Trial Court was not even given the name of the Louisiana suspect or whether he or she had any connection to Holley. There was neither direct nor circumstantial evidence connecting the Louisiana perpetrator to the Arkansas crime, other than a few similarities found in the two crime scenes, and we cannot conclude the Trial Court abused his discretion in refusing to allow the evidence to be admitted.
Zinger , 313 Ark. at 75-76, 852 S.W.2d at 323. Zinger has been applied many times since it was decided in 1993. In Harmon , 2014 Ark. 391, at 8, 441 S.W.3d 891, 895, this court recognized that the standard for admission of incriminating evidence against a third person, as set forth in Zinger , is merely an application of the Arkansas Rules of Evidence to a specific type of evidence. Pursuant to those rules, relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Ark. R. Evid. 401 (2018). However, relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury. Ark. R. Evid. 403.
Here, appellant argues that the circuit court erred in excluding evidence corroborating the defense that the killings were perpetrated by someone other than him and otherwise exculpating him on the charge of capital murder, i.e., showing that he was justified in being armed at the salvage yard for reasons other than a premeditated killing.
First, appellant argues that the circuit court erred in excluding photographs of footprints at the crime scene. After lead investigator Erick Riggs of the Pope County Sheriff's Department testified on cross-examination that there were various footprints at the scene, the State objected when the defense attempted to introduce photographs of the footprints. The State's position was that Zinger prevented admission of the pictures because the footprints could not be related to a particular person; appellant's position was that they were admissible to show a lack of investigation in that officers believed that the footprints were important enough to photograph and measure, but they were never investigated further. The circuit court excluded the photographs. Here, the footprints were not sufficiently linked to the murders to be relevant, and in any event, there was testimony regarding the existence of the footprints. Under these particular facts, we *147 hold that the circuit court did not abuse its discretion in excluding the photographs.
The other evidence on which appellant argues error concerns the following proffered but excluded witness testimony: employees McCubbin and Ibanez would have testified regarding the reasons for believing the victims would be coming to the property to steal parts and for believing that they were white supremacists; Investigator Keith Lunsford would have testified that he learned through the investigation that someone named J.J. was to have been with Brock and Dewitt at the time of their disappearance, that there was speculation that Brock Lee, the father of Rowan's child and a white supremacist, was involved, and a Randall Gordon stated that he was aware of a disturbance at a church in Casa in which a woman stated that the man with whom she had been arguing had killed two people; Erick Riggs would have discussed connections between J.J. Boen, the victims, and Brock Lee and white-supremacy groups; Officer John Reinhold would have testified that Dewitt's mother expressed concern that Brock Lee might have been involved; Doug Lewis would have testified that he was present at the church altercation in which it was stated that a man had just killed two men; Investigator Russell Hill would have testified that his interviews had disclosed the possibility that J.J. Boen, Brock Lee, and T.J. Ferguson might have been involved; and Zachary Berry would have testified that he knew Beau Dewitt and people in the Scranton area thought he was a violent hoodlum. Additionally, in the testimony of ATF agent Timothy Boles, the defense was precluded from asking him about the National Aryan Empire and the "To The Dirt" investigation. Appellant characterizes this as "evidence about the white supremacist associations of the deceased and evidence about specific persons with whom one or both of the deceased essentially were at war and thus had a motive to harm them."
Appellant argues that the circuit court misapplied Zinger in several ways: by essentially holding that Zinger supersedes other grounds for the admissibility of evidence; by agreeing with the prosecution that the evidence was inadmissible unless appellant testified; by suggesting through discussion of Schnarr v. State , 2017 Ark. 10, 2017 WL 374727, that appellant was arguing justification for the shooting (which he was not); and by suggesting that appellant was required to name a specific person as the alternative perpetrator. However, the fact remains that appellant could not connect the proffered evidence to the murders. This court has rejected arguments that a circuit court abused its discretion in excluding evidence of another person's motive for committing a crime when the defendant could not link the other person to the crime. See Conte , 2015 Ark. 220, 463 S.W.3d 686 ; Armstrong v. State , 366 Ark. 105, 233 S.W.3d 627 (2006). To be admissible, evidence suggesting third-party guilt must be sufficiently linked to the crimes charged. Here, the circuit court did not abuse its discretion by excluding testimony that merely suggested that others may have had a motive for these crimes or that another person had been publicly accused of having killed two unnamed men.
Appellant also argues that evidence of his knowledge of potentially violent white supremacists breaking into his property should have been admitted to explain why he was armed, and the Zinger doctrine is not implicated. The State responds that the testimony offered by appellant-had it been admitted-would have been more prejudicial than probative because the proffered testimony did not establish that either the appellant or the witnesses:
*148 (1) actually knew the victims were associated with white-supremacist groups; (2) personally knew the victims to be violent; or (3) had any knowledge that the victims had ever committed acts of violence. It simply established that, on the basis of tattoos, the witnesses told appellant that they believed the victims were associated with white supremacists and that white supremacists are violent. We agree that the circuit court did not abuse its discretion in excluding this evidence.
Finally, appellant argues that this court's holding in Zinger , and the circuit court's application of it, deprived him of his right to present a defense. However, the constitution permits the exclusion of evidence that is repetitive, only marginally relevant, or poses an undue risk of harassment, prejudice, or confusion of the issues. E.g. , Holmes v. South Carolina , 547 U.S. 319, 326-27, 126 S.Ct. 1727, 164 L.Ed.2d 503 (2006). Properly applied, Zinger prohibits evidence of third-party guilt that is irrelevant, or which is relevant but substantially outweighed by the danger of unfair prejudice or confusion because it is not sufficiently linked to the crime in question. Appellant has not shown a deprivation of his constitutional right to present a defense.
We hold that the circuit court did not abuse its discretion in excluding the evidence proffered by the defense.
B. Telescopic Sight
For his second point on appeal, appellant argues that the circuit court abused its discretion by permitting testimony regarding what could be seen using the telescopic sight mounted on appellant's rifle. At trial, appellant objected to the testimony of State witness Timothy Boles, a special agent with the Bureau of Alcohol, Tobacco, Firearms, and Explosives. Appellant objected to Agent Boles's testimony under Arkansas Rules of Evidence 401 and 403, arguing that it goes outside what the rules allow regarding demonstrative evidence and that the conditions under which Agent Boles used the scope were different from the conditions on the night of September 16-17, 2016, because it had not been raining, and the lighting would be different in different areas. The circuit court overruled the objection, stating the it would be helpful for the jury to understand how the scope operates and that the probative value outweighed any prejudicial effect. Agent Boles testified that on August 21, 2017, he conducted a low-level light evaluation of the scope mounted to the rifle found at appellant's house. At about 10:50 p.m., he took the rifle just outside U-Pull-It Auto Salvage and positioned himself so that he was looking down a row of cars. Using a range finder to accurately measure distances, he assessed the capabilities of the scope by comparing what he could see with his unaided eye to what he could see through the scope at the same distance. He determined that he could see better with the scope than without it. On cross-examination, Agent Boles testified that the night was clear, and he could see the stars. He further testified that he was unable to say whether the results of his test would be different if he had been facing another direction, such as away from the waste-water treatment plant.
On appeal, appellant argues that the circuit court abused its discretion because Agent Boles's testimony should have been excluded under Rule 403.[1] According to *149 appellant, the evidence was "prejudicial and confusing because it did not replicate the circumstances for which the testimony was offered." In this case, Agent Boles did not offer any opinion or testimony regarding what appellant could see with or without the scope on the night of the shootings. The evidence was relevant to explain to the jury the functioning of the scope, and the circuit court made the considered decision that it was not unduly prejudicial. We discern no abuse of discretion in the circuit court's decision to admit Agent Boles's testimony. Therefore, we affirm on this point.
III. Rule 4-3(i) Review
In compliance with Arkansas Supreme Court Rule 4-3(i), the record has been examined for all objections, motions, and requests made by either party that were decided adversely to appellant, and no prejudicial error has been found.
Affirmed.
Special Justice J. Cliff McKinney joins in this opinion.
Wood and Womack, JJ., concur in part and dissent in part.
Hart, J., dissents.
Kemp, C.J., not participating.

Ark. R. Evid. 403 provides:
Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.