Cite as 2020 Ark. 42

# SUPREME COURT OF ARKANSAS

No. CR-19-377

| | | |
|---|---|---|
| | | Opinion Delivered: January 30, 2020 |
| JAMES DERRICK GRUBBS | APPELLANT | APPEAL FROM THE WHITE COUNTY CIRCUIT COURT [NO.  73CR-95-138] |
| V. | | |
| STATE OF ARKANSAS | APPELLEE | HONORABLE ROBERT EDWARDS, JUDGE |
| | | AFFIRMED. |

RHONDA K. WOOD, Associate Justice

This is an appeal from a resentencing hearing conducted pursuant to *Miller v. Alabama*, 567 U.S. 460 (2012). The defendant committed capital murder at the age of seventeen and received an automatic sentence of life without parole. The issue raised now is whether the circuit court abused its discretion when it refused to instruct the jury on two instructions proffered by the defendant at the resentencing hearing. We hold that the circuit court acted within its discretion; accordingly, we affirm.

## I.  *Factual Background*

James Derrick Grubbs pleaded guilty to capital murder on September 26, 1995. He was seventeen years old when he committed the underlying offense. He was sentenced to life without the possibility of parole. In 2012, the United States Supreme Court in *Miller v. Alabama* held that the Eighth Amendment to the United States Constitution prohibited

the automatic imposition of a sentence of life imprisonment without the possibility of parole when the offender was under the age of eighteen when the crime was committed. 567 U.S. at 465. It was ultimately determined that Grubbs should be resentenced by a jury. A two-day resentencing hearing was held. The State presented testimony from law enforcement and the victim's family. The defense offered testimony from Grubbs's family; from prison officials; and from an expert witness in neuropsychology and child psychology who had examined Grubbs. After hearing this testimony, the jury imposed a sentence of life in prison.

This appeal arises from two jury forms proffered by Grubbs that were ultimately rejected by the circuit court. The first instruction at issue involved language, largely derived from *Miller*, regarding a juvenile's reduced culpability. The given instruction included the following language, which was virtually identical to that of the proffered instruction:

> [Grubbs] must be treated as a juvenile for purposes of this sentencing. Juveniles are constitutionally different from adults for purposes of sentencing.
>
> First, children have a lack of maturity and an underdeveloped sense of responsibility, leading to recklessness, impulsivity, and heedless risk-taking.
>
> Second, children are more vulnerable to negative influences and outside pressures, including from their family and peers; they have limited control over their own environment and lack the ability to extricate themselves from horrific, crime producing setting [*sic*].
>
> Third, a child's character is not as well formed as an adult's character. His traits are less fixed and his actions less likely to be evidence of irretrievable depravity.
>
> Before sentencing James Derrick Grubbs to life imprisonment, the jury must take into account how children are different, and how those differences counsel against irrevocably sentencing them to a lifetime in prison.

While the given instruction stopped there, Grubbs's proffered instruction went further. It would have instructed the jury with this additional paragraph:

> Jurors may sentence James Grubbs to a lifetime in prison only if you conclude that James Grubbs is that rare juvenile offender who exhibits such irretrievable depravity that rehabilitation is impossible and life imprisonment is justified. In light of children's diminished culpability and heightened capacity for change, appropriate occasions for sentencing juveniles to this harshest possible penalty will be uncommon.

The circuit court declined to give an instruction with this language, ruling instead that the given instruction "correctly states what is required under *Miller v. Alabama*."

The second jury instruction at issue contained mitigating circumstances. This instruction was also proffered by Grubbs but rejected by the circuit court. The proffered form contained fourteen circumstances for which the jury was given the option to select either, "All members of the jury find that this circumstance exists" or "No member of the jury finds that this circumstance exists." The form was titled "Special Circumstances." A few examples of the circumstances included whether Grubbs lacked maturity due to his age; whether he had completed high school; whether he could be rehabilitated; and whether he was a good son. In refusing to give this instruction, the court stated as follows:

> I don't think the law requires that any specific findings of special circumstances in this case like it would in a death penalty case. The standard verdict form that I will give the jury, in my opinion, is the appropriate verdict form. The instruction which defense has tailored from a death penalty case, in my opinion, does not apply to this case.

On appeal, Grubbs argues that the circuit court abused its discretion when it refused to give his two proffered instructions.

II. *Law and Analysis*

A party is entitled to a jury instruction when it is a correct statement of the law and when there is some basis in the evidence to support giving the instruction. *Vidos v. State*, 367 Ark. 296, 300, 239 S.W.3d 467, 476 (2006). We will not reverse the circuit court's decision to give or reject an instruction unless the court abused its discretion. *Clark v. State*, 374 Ark. 292, 305, 287 S.W.3d 567, 576 (2008). When the circuit court determines that the jury should be instructed on an issue, the model criminal instructions must be used unless the court concludes it does not accurately state the law. *Henderson v. State*, 349 Ark. 701, 710, 80 S.W.3d 374, 380 (2002). If a proffered instruction was not a correct statement of the law, that is a "valid and appropriate reason to refuse to give a particular jury instruction." *Stivers v. State*, 354 Ark. 140, 146, 118 S.W.3d 558, 562 (2003). Nor will it be error for the circuit court to refuse to give a proffered instruction if other instructions adequately covered the issue. *See Ventress v. State*, 303 Ark. 194, 197, 794 S.W.2d 619, 620 (1990).

Here, we hold that the circuit court did not abuse its discretion when it refused to give Grubbs's first proffered instruction regarding *Miller*. In *Miller*, the United States Supreme Court held that a "mandatory" sentence of life without parole for a juvenile violates the Eighth Amendment. 567 U.S. at 465. The companion case to *Miller* was *Jackson v. Hobbs*, which involved an Arkansas defendant. The juvenile defendant—Kuntrell Jackson—had been sentenced to life without the possibility of parole after a jury convicted

him of capital murder. *Id.* at 466. Jackson could not receive the death penalty due to his age; thus, the only available sentence was life in prison without parole. *See id.*

The Supreme Court reasoned that "[m]andatory life without parole for a juvenile precludes consideration of his chronological age and its hallmark features." *Id.* at 477. A sentencing regime authorizing such a sentence "neglects the circumstances of the homicide offense . . . and ignores that he might have been charged and convicted of a lesser offense if not for incompetencies associated with youth." *Id.* Even so, the Court did not prohibit a jury from imposing a life without parole sentence in a homicide case, but only after "tak[ing] into account how children are different, and how those differences counsel against irrevocably sentencing them to a lifetime in prison." *Id.* at 480.

The Court in *Miller* did not require that a jury receive the type of instruction Grubbs proffered. The *Miller* Court did not opine on the minutiae of sentencing instructions. While the Court theorized that a life-without-parole sentence would be "uncommon," it did not require a jury to be instructed on that theory as a matter of law. Rather, the Court required that the sentencing body "take into account how children are different." *Id.* at 480. Such was the case here both in fact and in law.[1] As to facts, Grubbs presented witnesses about his upbringing and expert testimony about the nature of brain

---

[1]Both the State and the dissenting opinion maintain that Grubbs was not entitled to any instruction regarding *Miller* because he was not eligible for a sentence of life without parole. *See* Fair Sentencing of Minors Act of 2017, § 13, codified at Ark. Code Ann. § 16-93-621 (Supp. 2019). The issue raised in this appeal, however, is whether the circuit court abused its discretion when it failed to instruct the jury with Grubbs's additional paragraph, not whether Grubbs was entitled to a *Miller*-type instruction at all.

development. As to law, the circuit court's given instruction on this topic correctly informed the jury of the state of the law following *Miller*. The court's refusal to give additional language was not an abuse of discretion.

The circuit court also did not abuse its discretion when it refused to give Grubbs's second proffered instruction containing mitigating circumstances. As the circuit court noted, the proffered instruction appeared to have been derived from AMI Crim. 2d 1008, which implements the trial procedure when a sentence of death is being sought. A death sentence is authorized only after the jury returns written findings that (1) an aggravating circumstance exists beyond a reasonable doubt; (2) aggravating circumstances outweigh beyond a reasonable doubt all mitigating circumstances found to exist; and (3) aggravating circumstances justify a sentence of death beyond a reasonable doubt. Ark. Code Ann. § 5-4-603 (Repl. 2013). Form 2 of AMI Crim. 2d 1008 provides a template to instruct the jury regarding various mitigating circumstances and gives the jurors the option to select, under each circumstance, whether all, one or more, or none found that the circumstance existed.

Grubbs fails to convincingly argue why a death-penalty aspect of the capital-sentencing scheme should have been imported to his case, when the death penalty could not be imposed. We decline to extend variations of Form 2 to cases that do not include the possibility of a death sentence. Indeed, the proffered form was altered from the model. The proffered form presented the jury with only two options: either all the jurors found the circumstance to exist or none did. Unlike the model form, it did not have as an option "at least one, but not all" of the jurors found the circumstance to exist. For this reason, the

proffered form was both "non-model" and likely to lead to confusion. We hold that the court did not abuse its discretion when it refused to give this instruction.

III. *Rule 4-3(i)*

In compliance with Arkansas Supreme Court Rule 4-3(i), the record has been examined for all objections, motions, and requests made by either party that were decided adversely to appellant. No prejudicial error has been found.

Affirmed.

HART, J., concurs.

WOMACK, J., concurs in part; dissents in part.

**JOSEPHINE LINKER HART, Justice, concurring.** I agree that this case must be affirmed, but I cannot join the majority opinion. First, the majority fails to even properly copy Mr. Grubbs's actual points on appeal. They are:

I. **The trial court erred by refusing to give the jury a proffered instruction based on *Miller v. Alabama.***

II. **The trial court erred by refusing to give special verdict interrogatories proffered by Grubbs.**

Inexplicably, the majority has confused "**instructions**" with "**interrogatories**." *Black's Law Dictionary* defines a jury *instruction* as "A direction or guideline that a judge gives a jury concerning the law of the case." *Black's Law Dictionary* 987 (10th ed. 2014). It defines a special *interrogatory* as "A written jury question whose answer is required to supplement a general verdict." *Black's Law Dictionary* 947 (10th ed. 2014). Through *instructions*, a

7

jury receives information from the court, whereas through *interrogatories*, the court receives information from the jury.

In my view, the majority's legal analysis is also flawed. The majority reasons that the circuit court did not abuse its discretion because the proffered jury instruction was not required by *Miller v. Alabama*, 567 U.S. 460 (2012). This analysis fails to reflect the true legal and procedural posture of Mr. Grubbs's case at the time of his sentencing hearing.

Mr. Grubbs's proffered instruction borrows language from the *Miller* Court's discussion of life sentences without parole for juvenile offenders. However, in *Jackson v. Norris*, 2013 Ark. 175, 426 S.W.3d 906, this court struck the requirement of a mandatory life-without-parole sentence for juvenile capital-murder defendants. The *Jackson* court stated:

> We thus instruct the Mississippi County Circuit Court to hold a sentencing hearing where Jackson may present *Miller* evidence for consideration. We further instruct that Jackson's sentence must fall within the statutory discretionary sentencing range for a Class Y felony. For a Class Y felony, the sentence is not a mandatory sentence of life imprisonment without parole, but instead a discretionary sentencing range of not less than ten years and not more than forty years, or life. Ark. Code Ann. § 5-4-401(a)(1) (Repl.1997).

2013 Ark. 175, at 9, 426 S.W.3d at 911.

After *Jackson* was handed down, Mr. Grubbs's sentence was vacated. Also, prior to his sentencing hearing, in 2017, Arkansas Code Annotated section 16-93-613 (Supp. 2019) was amended to state:

8

(c) Except as provided for under **§** 16-93-619, for an offense committed before, on, or after the effective date of this act, a person who was a minor at the time of committing an offense listed under subsection (a) of this section is eligible for release on parole under this section.

Consequently, at the time of Mr. Grubbs's sentencing hearing, he did not face a sentence of life without the possibility of parole. While *Jackson* mandated that he was entitled to present "*Miller* evidence," in effect, he was no longer what we describe as a "*Miller*" defendant. Thus, while it is true that a party is entitled to a jury instruction when it is a correct statement of the law and when there is some basis in the evidence to support giving the instruction. *Vidos v. State*, 367 Ark. 296, 300, 239 S.W.3d 467, 476 (2006), in this case, the circuit court did not abuse its discretion when it refused to give Mr. Grubbs's full instruction because it was not a correct statement of the law.

Finally, the circuit court did not err in refusing to give the special interrogatories because they are not required by Arkansas law in any criminal case except for death-penalty cases.

I concur.

**SHAWN A. WOMACK, Justice, concurring in part and dissenting in part.** I concur in the judgment but cannot join the rationale of the majority. The sentencing considerations required under *Miller v. Alabama*, 567 U.S. 460 (2012), apply only to juvenile offenders facing a sentence of life without parole. Given that Grubbs faced a maximum sentence of life with the possibility of parole, *Miller* did not apply to his

resentencing. He was, therefore, not entitled to any instructions under *Miller*. The majority's suggestion otherwise misconceives the scope of *Miller*, improperly expanding it to encompass sentences less than life without parole.

*Miller* announced a substantive Eighth Amendment rule prohibiting the mandatory sentencing of juvenile offenders to life without parole. *Id.* at 479.[1] It also contained a procedural component that "requires a sentencer to consider a juvenile offender's youth and attendant characteristics before determining that life without parole is a proportionate sentence." *Montgomery*, 136 S. Ct. at 734 (citing *Miller*, 567 U.S. at 483). This requirement "gives effect to *Miller*'s substantive holding that life without parole" may be disproportionate for certain juvenile offenders. *Id.* at 735. And thus, before sentencing a juvenile to life without parole, the sentencer must "take into account how children are different, and how those differences counsel against *irrevocably* sentencing them to a lifetime in prison." *Miller*, 567 U.S. at 480 (emphasis added). In short, *Miller* has no relevance to sentences less than life without parole.

This is true even though Grubbs's original sentence of life without parole was vacated under *Miller* and *Montgomery*. As the majority recognizes, the jury was asked to resentence Grubbs to a term of ten to forty years or to life with the possibility of parole after thirty years. Because Grubbs was not faced with the prospect of life without parole at

---

[1]The United States Court of Appeals for the Fourth Circuit recently held that *Montgomery v. Louisiana*, 136 S. Ct. 718 (2016), expanded *Miller*'s scope to include discretionary sentences of life without parole. *See Malvo v. Mathena*, 893 F.3d 265 (4th Cir. 2018). The case is currently pending before the United States Supreme Court. *See Mathena v. Malvo*, No. 18-217, 139 S. Ct. 1317 (2019) (mem) (granting certiorari).

resentencing, *Miller* simply did not apply. To suggest otherwise, the majority must willfully ignore *Miller*'s explicit parameters. Indeed, *Miller* emphasized the "life without parole" component of its holding numerous times. *See Miller*, 567 U.S. at 465, 470, 473–74, 477, 479, 487, 489. Why would the *Miller* Court spill so much ink over the "particular penalty" of life without parole unless it was a critical distinction? *See id.* at 483.

What is more, "the Supreme Court has placed no explicit constraints on a sentencing court's ability to sentence a juvenile offender to life with parole." *Bowling v. Director, Va. Dep't of Corr.*, 920 F.3d 192, 197 (4th Cir. 2019); *see also United States v. Sparks*, 941 F.3d 748, 754 (5th Cir. 2019) (life with the possibility of parole "can be imposed on a mandatory basis for juveniles without implicating *Miller*"). That said, Arkansas permits a defendant convicted of capital murder to present mitigating evidence regarding the "youth of the defendant at the time of the commission of the capital murder." Ark. Code Ann. § 5-4-605(4) (Supp. 2018); *see also* Ark. Code Ann. § 16-97-103(6) (Repl. 2016). To the extent Grubbs could present mitigating evidence of youth at resentencing, it was permissible under Arkansas statute—not *Miller* and its progeny.

The majority responds that the issue on appeal is whether the circuit court abused its discretion by failing to give Grubbs's proffered instruction in its entirety, "not whether Grubbs was entitled to a *Miller*-type instruction at all." This is true. But the majority cannot seriously contend that its opinion is so narrow. Indeed, the majority correctly recites what *Miller* requires—and even references the "life without parole" distinction—but then immediately misapplies *Miller* by concluding that "[s]uch was the case here both in

11

fact and in law." And though the given instructions "correctly informed the jury of the state of the law following *Miller*," they were simply inapplicable to this non-*Miller* case. By suggesting otherwise, the majority erroneously and improvidently expands *Miller*'s requirements to sentences of less than life without parole.

Grubbs may well be a free man in five years' time. That decision, of course, rests within the discretion of the Arkansas Parole Board. As part of the Fair Sentencing of Minors Act of 2017, the board must consider several factors announced in *Miller*, such as "the diminished culpability of minors compared to that of adults," and the "hallmark features of youth." *Compare* Ark. Code Ann. § 16-93-621(b) (Supp. 2018), *with Miller*, 567 U.S. at 477-79. These considerations are designed to help guide the parole decision but are not controlling. Indeed, "[a] State is not required to guarantee eventual freedom to a juvenile offender [serving life with parole] . . . [or] to release that offender during his natural life." *Graham v. Florida*, 560 U.S. 48, 75 (2010). However, the parole considerations provide juvenile offenders "a meaningful opportunity to be released . . . based on demonstrated maturity and rehabilitation." *See* Ark. Code Ann. § 16-93-621(b)(1); *cf. Miller*, 567 U.S. at 479 (quoting *Graham*, 560 U.S. at 75). Accordingly, it is only at Grubbs's eventual parole hearing that the so-called "*Miller* considerations" apply. And even then, it is required as a matter of state law, not Eighth Amendment jurisprudence.

As a final point, this is precisely the sort of needless hearing discussed in my dissent in *Harris v. State*, 2018 Ark. 179, at 22–23, 547 S.W.3d 64, 75–76 (Womack, J.,

12

dissenting).  The resentencing hearing was wholly unnecessary under *Miller* and in violation of the Fair Sentencing of Minors Act.  *Id.*  Grubbs should have been resentenced to life with the possibility of parole under the Act.  *See id.*; Ark. Code Ann. § 5-10-101(c)(1)(B) (Supp. 2018).  The time and expense necessary to reach the exact same sentence, but by jury, was an unwarranted waste of public and judicial resources.

In sum, *Miller* was inapplicable to Grubbs's resentencing hearing.  By improperly broadening *Miller* to include discretionary sentences of life with parole, the majority has established precedent for further exceeding the scope of *Miller* into all juvenile sentencing cases.  This is flatly inconsistent with *Miller* and Eighth Amendment juvenile sentencing caselaw.  Therefore, I must concur only in the judgment.  I also join in part Justice Hart's concurring opinion with respect to Grubbs's "special interrogatories" claim.

*Cullen & Co., PLLC*, by:  *Tim Cullen*, for appellant.

*Leslie Rutledge*, Att'y Gen., by:  *Christopher R. Warthen*, Ass't Att'y Gen., for appellee.