Cite as 2021 Ark. 96

# SUPREME COURT OF ARKANSAS

No. CR-20-232

| | |
|---|---|
| MONTRELL DASHONE VENTRY<br>APPELLANT<br><br>V.<br><br>STATE OF ARKANSAS<br>APPELLEE | **Opinion Delivered:** April 29, 2021<br><br>APPEAL FROM THE SALINE COUNTY<br>CIRCUIT COURT<br>[NO. 63CR-07-669]<br><br>HONORABLE GARY ARNOLD, JUDGE<br><br>AFFIRMED. |

**ROBIN F. WYNNE, Associate Justice**

Montrell Dashone Ventry appeals from the life sentence imposed by a Saline County jury at a resentencing hearing after his original sentence of life imprisonment without parole was vacated due to *Miller v. Alabama*, 567 U.S. 460 (2012). For reversal, Ventry argues that the trial court should have (1) permitted the introduction of the sentences imposed on his codefendants; (2) excluded testimony about an alleged escape attempt while Ventry was awaiting his original trial; and (3) granted a directed verdict and prohibited the jury from imposing a life sentence. Ventry also asks this court to clarify our rulings regarding parole eligibility under the Fair Sentencing for Minors Act of 2017 (FSMA). We affirm.

I. *Background*

In 2008, Montrell Ventry was found guilty of capital murder and aggravated robbery in the shooting death of Nicholas Jones and sentenced to life without the possibility of

parole. We affirmed. *Ventry v. State*, 2009 Ark. 300, 318 S.W.3d 576. Ventry was seventeen years old when he committed the offenses. In 2012, the United States Supreme Court held that the Eighth Amendment prohibited a sentencing scheme that mandates life imprisonment without the possibility of parole for juvenile offenders. *Miller*, 567 U.S. at 479. Ventry's sentence was vacated, and a three-day resentencing hearing was held in August 2019.

At the resentencing hearing, the State offered testimony from surviving victim Eddie Dixon, family members of Jones and Dixon, law enforcement officials, the medical examiner, officials from the Arkansas Department of Correction and the Arkansas Parole Board, and two witnesses to Ventry's attempted escape from custody. Ventry and his mother testified for the defense. At the close of the State's case, and again at the close of all the evidence, Ventry moved for a directed verdict, arguing that the State had failed to prove that he was irretrievably depraved and therefore could not be sentenced to life. The trial court denied the motion. The jury was instructed that capital murder, when committed by a juvenile, was punishable by imprisonment for a term of not less than ten years and not more than forty years, or life, and that Ventry would be eligible for parole after thirty years if he received a life sentence. The jury imposed a life sentence. This appeal followed.

II. *Points on Appeal*

Ventry first argues that the trial court should have permitted the introduction of the sentences imposed on his codefendants. Before the sentencing hearing, the State moved to exclude the sentences of codefendants Terrance Rhodes, Mohammad Siddiq, and Sultannah

2

Siddiq, which the trial court granted. Ventry cites *Miller* and *Montgomery v. Louisiana*, 577 U.S. 190 (2016), for the proposition that proportionality is a concern in juvenile sentencing under the Eighth Amendment. He contends that he should have been able to present his codefendants' sentences to argue that his sentence should be proportionate to those received by his codefendants. Ventry argues that this issue raises a constitutional claim and that he is entitled to relief under *Chapman v. California*, 386 U.S. 18 (1967).

This court reviews the admission of evidence by the trial court using an abuse-of-discretion standard. *Barefield v. State*, 2019 Ark. 149, at 4, 574 S.W.3d 142, 145. The decision to admit or exclude evidence is within the sound discretion of the trial court, and we will not reverse a court's decision regarding the admission of evidence absent a manifest abuse of discretion. *Id.* Abuse of discretion is a high threshold that does not simply require error in the trial court's decision, but also requires that the trial court act improvidently, thoughtlessly, or without due consideration. *Collins v. State*, 2019 Ark. 110, at 5, 571 S.W.3d 469, 472.

We have repeatedly held that the sentence received by a codefendant is not relevant to a defendant's guilt, innocence, or punishment. *See Baxter v. State*, 324 Ark. 440, 446, 922 S.W.2d 682, 685 (1996); *Robinson v. State*, 278 Ark. 516, 517, 648 S.W.2d 444, 444 (1983). Nothing in *Miller* or *Montgomery* suggests that this rule should not apply to juvenile defendants. Those cases examined whether mandatory sentences of life without parole imposed on juveniles were proportionate given that "children are constitutionally different from adults for purposes of sentencing." *Montgomery*, 577 U.S. at 206. "The 'foundation

3

stone' for *Miller*'s analysis was this Court's line of precedent holding certain punishments disproportionate when applied to juveniles." *Id.* at 206. But the differences between juveniles and adults for sentencing purposes have no bearing on the relevance of sentences imposed on juveniles' codefendants. Because the sentences received by Ventry's codefendants are not relevant to Ventry's sentence, the trial court did not abuse its discretion in excluding evidence of those sentences.

Next, Ventry argues that the trial court should have excluded testimony about an alleged escape attempt—while Ventry was awaiting his initial trial—for which he was never convicted. In October 2007, Ventry attempted to escape from custody by fleeing from a police vehicle. The State nolle prossed the escape attempt and did not introduce evidence of the attempt at the initial trial, although the State did introduce evidence of a separate attempt: Ventry's flight from officers at the time of his arrest. The trial court heard arguments on the admissibility of this evidence. After noting that it "was inclined to believe that would be more prejudicial than plain error [sic]," the trial court ruled that evidence of the attempt was admissible because it would have been admissible in the guilt phase. At the sentencing hearing, two witnesses testified about the escape attempt.

Ventry contends that the trial court ruled that the evidence of the escape attempt was admissible without properly conducting an analysis under Arkansas Rule of Evidence 403. Rule 403 provides that relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice. Ventry argues that in admitting the evidence, the trial court determined that "admissibility automatically trumps any

prejudice."

This court reviews a trial court's decision to admit evidence in the penalty phase of a trial for an abuse of discretion. *Brown v. State*, 2010 Ark. 420, at 12, 378 S.W.3d 66, 73. Pursuant to Arkansas Code Annotated section 16-97-103 (Repl. 2016), evidence relevant to sentencing includes but is not limited to relevant character evidence and evidence of aggravating circumstances. We have stated that "once the jury has determined that the defendant is guilty, additional evidence, even evidence regarding attempted crimes, may be admissible if it gives the jury as much information as possible when it makes its sentencing decisions." *Buckley v. State*, 341 Ark. 864, 874, 20 S.W.3d 331, 338 (2000). We have held that evidence of attempted escape is admissible during the sentencing phase of the trial, concluding that "[a] criminal defendant's proclivity for escape is a pertinent factor in a jury's sentencing decision." *Skiver v. State*, 336 Ark. 86, 99, 983 S.W.2d 931, 938 (1999).

The trial court did not abuse its discretion in permitting testimony about Ventry's escape attempt. The trial court did not, as Ventry suggests, automatically assume that admissibility trumps prejudice. Rather, the trial court heard arguments on the issue and considered prejudice before concluding that the evidence was admissible. Evidence of Ventry's attempted escape was relevant to his character. Ventry's "proclivity for escape" was pertinent to the jury's sentencing decision. *Skiver, supra*. And this evidence gave the jury "as much information as possible" in making its sentencing decision. *Buckley, supra*. We cannot say that the trial court acted improvidently, thoughtlessly, or without due consideration in admitting this evidence. Therefore, we affirm on this point.

Ventry next argues that the trial court should have granted a directed verdict and prohibited the jury from imposing a life sentence. Ventry contends that *Miller* and *Montgomery* required the State to prove permanent incorrigibility or irretrievable depravity before he could be sentenced to life imprisonment. He points to language in *Montgomery* explaining that "*Miller* determined that sentencing a child to life without parole is excessive for all but the rare juvenile offender whose crime reflects irreparable corruption" and is thus unconstitutional for "juvenile offenders whose crimes reflect the transient immaturity of youth." 577 U.S. at 208 (internal quotation marks omitted). Ventry argues that the State failed to prove that he was permanently incorrigible, showing evidence of the numerous programs he completed in prison. He also argues that he is not old enough to show permanent incorrigibility.

The State was not required to prove that Ventry was permanently incorrigible before he could be sentenced to life with the possibility of parole. The United States Supreme Court recently held that *Miller* and *Montgomery* do not require a finding of permanent incorrigibility before a juvenile can be sentenced to life without parole. *Jones v. Mississippi*, 593 U.S. ___ (2021). Ventry did not face a possible sentence of life without parole; he faced a possible sentence of ten to forty years in prison, or life, with parole eligibility after thirty years. If the Constitution does not require a finding of permanent incorrigibility before a juvenile can be sentenced to life without parole, it follows that the Constitution requires no such finding before a juvenile can be sentenced to life with the possibility of parole. Because the State was not required to prove that Ventry was permanently incorrigible before the jury could impose

6

a sentence of life with the possibility of parole, the trial court did not err in denying the motion for directed verdict.

Finally, Ventry urges this court to clarify our rulings regarding parole eligibility under the FSMA. He claims that this court's language regarding the retroactivity of the parole-eligibility provisions of the FSMA in recent cases, including *Harris v. State*, 2018 Ark. 179, 547 S.W.3d 64, and *Scherrer v. State*, 2019 Ark. 264, 584 S.W.3d 243, is overly broad. Specifically, he asks us to clarify how the FSMA's parole-eligibility provisions apply to *Miller* defendants whose sentences were vacated before the FSMA's enactment.

This case does not present a dispute regarding the parole-eligibility provisions of the FSMA for us to resolve. Both Ventry and the State agreed at the sentencing hearing that Ventry would be eligible for parole after serving thirty years if he received a life sentence. The jury was instructed accordingly. The sentencing order states that Ventry is subject to the provisions of the FSMA and is eligible for parole after serving thirty years. The parties currently agree that Arkansas Code Annotated section 16-93-621(a)(2)(A) applies to Ventry and that he will be eligible for parole after serving thirty years. We do not answer academic questions or issue advisory opinions. *See Hampton v. State*, 2014 Ark. 303, at 7, 437 S.W.3d 689, 693. Therefore, we decline to address this point.

### III. *Rule 4-3(a) Review*

Because Ventry was sentenced to life imprisonment, the record has been examined for all objections, motions, and requests made by either party that were decided adversely to

7

Ventry in compliance with Arkansas Supreme Court Rule 4-3(a). No prejudicial error has been found.

Affirmed.

*Jeff Rosenzweig*, for appellant.

*Leslie Rutledge*, Att'y Gen., by: *Pamela Rumpz*, Sr. Ass't Att'y Gen., for appellee.