Cite as 2021 Ark. 114

# SUPREME COURT OF ARKANSAS

**No.** CR-20-407

| | |
|---|---|
| MATTHEW RYAN ELLIOTT<br>APPELLANT<br><br>V.<br><br>STATE OF ARKANSAS<br>APPELLEE | **Opinion Delivered:** May 20, 2021<br><br>APPEAL FROM THE COLUMBIA COUNTY CIRCUIT COURT<br>[NO. 14CR-00-39]<br><br>HONORABLE DAVID W. TALLEY, JR., JUDGE<br><br><br>AFFIRMED. |

**JOHN DAN KEMP, Chief Justice**

Appellant Matthew Ryan Elliott appeals an order of the Columbia County Circuit Court resentencing him to a term of life imprisonment. For reversal, Elliott argues that the circuit court erred in denying his resentencing motion, permanent-incorrigibility instruction, and witness testimony. We affirm.

## I. *Facts*

In the early morning hours of February 5, 2000, Elliott bludgeoned fifteen-year-old Brittni Pater at least seventeen times in the head with a two-foot aluminum bar. *See Davis v. State*, 350 Ark. 22, 26–27, 86 S.W.3d 872, 875 (2002) (direct appeal of Elliott's accomplice). Elliott then drove over the victim's head with his car, and Pater died from her injuries. *Id*. at 27, 86 S.W.3d at 875. Elliott, who was sixteen years old at the time, killed Brittni because he believed she was pregnant with his child. *Id*., 86 S.W.3d at 875. On April

19, 2000, he pleaded guilty to capital murder. The State waived the death penalty, and Elliott received a mandatory sentence of life imprisonment without the possibility of parole. *See* Ark. Code Ann. § 5-10-101(c) (Repl. 1997) (amended 2017).

Following the Supreme Court of the United States' decision in *Miller v. Alabama*, 567 U.S. 460 (2012), Elliott's sentence of life imprisonment without parole was vacated. We provided a detailed account of the procedural history in *Elliott v. State*, 2019 Ark. 162. In *Elliott*, we held that the circuit court erred by sentencing Elliott under the Fair Sentencing of Minors Act of 2017 (FSMA) (1) because the penalty provisions of the Act did not apply retroactively; and (2) because his sentence had been vacated by the Jefferson County Circuit Court, he no longer served a sentence to which parole eligibility could attach. *Id.* at 4–5. Accordingly, we reversed and remanded for a resentencing hearing in which Elliott was "entitled to present *Miller* evidence for consideration and where he [was] subject to the discretionary sentencing range for a Class Y felony, which is ten to forty years or life." *Id.* at 5.

Prior to resentencing, Elliott filed a "Motion to Determine the Appropriate Procedure and Sentencing Range for Resentencing" and argued that the proper sentencing range included a term of imprisonment from ten to forty years—not ten to forty years, or life. Alternatively, he argued that the circuit court should bifurcate his resentencing proceeding and make a threshold finding of irreparable corruption or permanent incorrigibility prior to considering a sentence of life without parole. The circuit court denied Elliott's sentencing motion.

On February 25, 2020, the circuit court began a four-day resentencing hearing during which the State presented testimony from law enforcement, expert witnesses from the Arkansas State Crime Laboratory, Elliott's codefendant, and the victim's parents. The defense offered testimony from an expert witness in neuropsychology, a former inmate, Elliott's childhood friend, his mother, prison officials, and Elliott. The jury was instructed that capital murder, when committed by a juvenile, is punishable by imprisonment for a term of not less than ten years and not more than forty years, or life. After deliberations, the jury imposed a sentence of life imprisonment. On February 28, 2020, the circuit court entered a sentencing order reflecting the jury's sentence. Elliott timely filed his notice of appeal.

## II. *Sentencing Motion*

For his first point on appeal, Elliott argues that the circuit court erred in denying his "Motion to Determine the Appropriate Procedure and Sentencing Range for Resentencing." Specifically, he contends that the appropriate range of sentencing was a term of ten to forty years—not a term of ten to forty years, or life. He also asserts that he should have been sentenced to life imprisonment after a threshold finding that he was a rare juvenile-homicide offender whose crime reflected permanent incorrigibility.

### A. Elliott's Life Sentence

Elliott claims in his argument to this court that "[a] sentence of life imprisonment in Arkansas is a sentence of life without parole." His argument is misplaced.

Sentencing in Arkansas is entirely a matter of statute. *See Buckley v. State*, 349 Ark. 53, 76 S.W.3d 825 (2002). Under Arkansas law, a jury is charged with reaching a verdict

3

on each charge and will determine the sentence within the proper statutory range. *See* Ark. Code Ann. § 5-4-103(a) (Repl. 2013) (fixing punishment in a separate proceeding); Ark. Code Ann. § 5-4-602 (Repl. 2013) (governing trial procedure for capital murder); Ark. Code Ann. § 16-97-101 (Repl. 2016) (governing sentencing phases in felony jury trials). Elliott had been convicted of capital murder, a Class Y felony. Pursuant to Arkansas Code Annotated section 5-4-401(a) (Repl. 2013), the sentencing range for a Class Y felony is not less than ten years and not more than forty years, or life. *See Elliott*, 2019 Ark. 162, at 5.

Recently, we affirmed the sentence of a *Miller* defendant in *Ventry v. State*, 2021 Ark. 96. In *Ventry*, seventeen-year-old Ventry was found guilty of capital murder and aggravated robbery in 2008 and was sentenced to life imprisonment without the possibility of parole. *Id.* at 1–2. After Ventry's sentence was vacated pursuant to *Miller*, 567 U.S. 460, the circuit court held a resentencing hearing, and the jury imposed a term of life imprisonment. *Id.* at 2. The sentencing order stated that Ventry was subject to the provisions of the FSMA and was eligible for parole after serving thirty years. *Id.* at 7. We affirmed and definitively stated, "Ventry did not face a possible sentence of life without parole; he faced a possible sentence of ten to forty years in prison, or life, with parole eligibility after thirty years." *Id.* at 6.

In the case at bar, the jury heard the evidence presented at Elliott's resentencing hearing; was instructed that the sentencing range was a term of ten to forty years, or life; and returned a sentence of life imprisonment. As such, Elliott did not face a possible sentence of life without parole. *See id.* He faced a possible sentence of ten to forty years in prison, or life, with parole eligibility after thirty years. *See id.* Thus, we conclude that Elliott's term of life imprisonment was within the statutory sentencing range for a Class Y felony under

4

section 5-4-401(a) and that the circuit court properly denied Elliott's resentencing motion on this basis.[1]

### B. Permanent Incorrigibility

Next, Elliott urges this court to adopt a bifurcated resentencing hearing for a threshold finding of whether he was irreparably corrupt or permanently incorrigible before sentencing him to life imprisonment. Elliott asserts that we must reverse and remand with instructions that a jury must find that he fits within a category of rare juveniles whose crimes have reflected permanent incorrigibility before he can be sentenced to a term of life.

The Supreme Court of the United States recently held in *Jones v. Mississippi*, 141 S. Ct. 1307, 1318–19 (2021), that *Miller*, 567 U.S. 460, and *Montgomery v. Louisiana*, 577 U.S. 190 (2016), do not require a finding of permanent incorrigibility before a juvenile can be sentenced to life without parole. Citing *Jones*, we stated in *Ventry*, 2021 Ark. 96, that

> [t]he State was not required to prove that Ventry was permanently incorrigible before he could be sentenced to life with the possibility of parole. . . . If the Constitution does not require a finding of permanent incorrigibility before a juvenile can be sentenced to life without parole, it follows that the Constitution requires no such finding before a juvenile can be sentenced to life with the possibility of parole. Because the State was not required to prove that Ventry was permanently incorrigible before the jury could impose a sentence of life with the possibility of parole, the trial court did not err in denying the motion for directed verdict.

*Id*. at 6–7.

---

[1] Elliott also asserts—and the State concedes—that the jury was erroneously instructed that "[p]ersons under sentence of life imprisonment are not eligible for transfer," or that he would be ineligible for parole. This erroneous jury instruction, however, did not prejudice Elliott because he is not subject to a sentence of life without parole.

Here, in light of our holding in *Ventry*, 2021 Ark. 96, which relied on *Jones*, 141 S. Ct. at 1318–19, we decline to adopt a bifurcated proceeding in these circumstances. Simply put, a threshold finding of permanent incorrigibility does not apply in Elliott's case because he was sentenced to a term of life imprisonment with the possibility of parole instead of life imprisonment without parole. Therefore, we hold that the circuit court properly denied Elliott's "Motion to Determine the Appropriate Procedure and Sentencing Range for Resentencing" on this ground, and we affirm on this point.

### III. *Jury Instruction*

For his second point on appeal, Elliott argues that the circuit court abused its discretion in refusing his permanent-incorrigibility jury instruction. Elliott contends that if the jury had heard the proffered instruction, then it would have found that he was not a permanently incorrigible offender.

Our standard of review concerning jury instructions is well settled. A party is entitled to a jury instruction when it is a correct statement of the law and when there is some basis in the evidence to support giving the instruction. *Grubbs v. State*, 2020 Ark. 42, at 4, 592 S.W.3d 688, 691. We will not reverse the circuit court's decision to give or reject an instruction unless the court abused its discretion. *Id.*, 592 S.W.3d at 691. When the circuit court determines that the jury should be instructed on an issue, the model criminal instructions must be used unless the court concludes they do not accurately state the law. *Id.*, 592 S.W.3d at 691. If a proffered instruction was not a correct statement of the law, that is a valid and appropriate reason to refuse to give a particular jury instruction. *Id.*, 592

6

S.W.3d at 691. Nor will it be erroneous for the circuit court to refuse to give a proffered instruction if other instructions adequately covered the issue. *Id.*, 592 S.W.3d at 691.

We addressed a similar issue in *Grubbs*, 2020 Ark. 42, 592 S.W.3d 688. Grubbs pleaded guilty to capital murder for an offense that he committed when he was seventeen years old, and the jury sentenced him to life without the possibility of parole. *Id.* at 1, 592 S.W.3d at 689–90. After *Miller*, Grubbs was resentenced to a term of life imprisonment. *Id.* at 2, 592 S.W.3d at 690. Grubbs proffered a jury instruction with an additional paragraph:

> Jurors may sentence James Grubbs to a lifetime in prison only if you conclude that James Grubbs is that rare juvenile offender who exhibits such irretrievable depravity that rehabilitation is impossible and life imprisonment is justified. In light of children's diminished culpability and heightened capacity for change, appropriate occasions for sentencing juveniles to this harshest possible penalty will be uncommon.

*Id.* at 3, 592 S.W.3d at 690. The circuit court refused to give the jury instruction with this additional language and ruled that the given instruction "correctly states what is required under *Miller v. Alabama.*" *Id.*, 592 S.W.3d at 690. We held that the circuit court did not abuse its discretion when it refused to give Grubbs's proffered instruction because the circuit court's given instruction accurately informed the jury of the state of the law following *Miller*. *Id.* at 6, 592 S.W.3d at 692.

In the present case, Elliott proffered the following juvenile capital-murder jury instruction:

> Matthew Ryan Elliott pleaded guilty to Capital Murder. He was sixteen years of age at the time of the commission of the homicide offense. Matthew Ryan Elliott is to be sentenced on the Charge of Capital Murder. Capital Murder when committed by a juvenile is punishable by imprisonment in the Department of Correction for not less than ten (10) years and not more than 40 years, or life.

Matthew Ryan Elliott may not be sentenced to a term of life without consideration of his special circumstances in light of the principles and purposes of juvenile sentencing. Matthew Ryan Elliott was sixteen years of age at the time of the commission of a homicide offense. He must be treated as a juvenile for purposes of this sentencing. Juveniles are constitutionally different from adults for purposes of sentencing.

First, children have a lack of maturity and an underdeveloped sense of responsibility, leading to recklessness, impulsivity, and heedless risk-taking.

Second, children are more vulnerable to negative influences and outside pressures, including from their family and peers; they have limited control over their own environment and lack the ability to extricate themselves from horrific, crime producing settings.

Third, a child's character is not as well formed as an adult's; his traits are less fixed and his actions less likely to be evidence of irretrievable depravity.

The proffered jury instruction also included the following final paragraph:

Before sentencing Matthew Ryan Elliott to life, the jury must take into account how children are different, and how those differences counsel against irrevocably sentencing them to a lifetime in prison. Jurors may sentence Matthew Ryan Elliott to a lifetime in prison only if you conclude that Matthew Ryan Elliott is that rare juvenile offender who exhibits such irretrievable depravity that rehabilitation is impossible and life imprisonment is justified. In light of children's diminished culpability and heightened capacity for change, appropriate occasions for sentencing juveniles to this harshest possible penalty will be uncommon.

Citing *Grubbs*, 2020 Ark. 42, 592 S.W.3d 688, as authority, the circuit court declined to instruct the jury on the final paragraph of the instruction.

Our holding in *Grubbs* controls. The proffered jury instruction without the defense's additional language accurately reflected the law in Elliott's case. Further, based on the holdings in *Ventry*, 2021 Ark. 96, and *Jones*, 141 S. Ct. at 1318–19, a jury instruction on the issue of permanent incorrigibility is not required in this instance. Thus, we hold that the circuit court did not abuse its discretion in refusing to give Elliott's proffered instruction.

8

IV. *Witness Testimony*

For his last point on appeal, Elliott argues that the circuit court erred in sustaining the State's objection to a witness's testimony comparing Elliott's rehabilitation to that of other inmates. The State responds that the issue is not preserved for appellate review, and alternatively, that the circuit court did not abuse its discretion in excluding this testimony because it was irrelevant.[2]

Rule 401 of the Arkansas Rules of Evidence defines relevant evidence as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Ark. R. Evid. 401. Arkansas Rule of Evidence 402 further provides that "[e]vidence which is not relevant is not admissible." Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence. Ark. R. Evid. 403. Evidence of a pertinent trait of an accused's character is admissible under Rule 404(a)(1), if offered by the accused, or by the prosecution to rebut the same.

Arkansas Code Annotated section 16-97-103 (Repl. 2016) provides a list of evidence relevant to sentencing, and relevant character evidence is included. Ark. Code Ann. § 16-97-103(5). We have held that character evidence that might not be admissible at the guilt

---

[2]Because of the extensive arguments to the circuit court during which defense counsel stated Deputy Warden Phillip Glover's testimony would involve a comparison between inmates' conduct to Elliott's conduct, this issue is preserved for our appellate review.

phase under Rule 404 could be admissible at sentencing under section 16-97-103(5). *Crawford v. State*, 362 Ark. 301, 306, 208 S.W.3d 146, 149 (2005). We review a circuit court's decision to admit evidence in the penalty phase of a trial for an abuse of discretion. *Ventry*, 2021 Ark. 96, at 5.

With this precedent in mind, we turn to the present case. During the testimony of Deputy Warden Glover, the following colloquy occurred:

| | |
|---|---|
| DEFENSE: | [I]n your experience, did you see a number of juveniles or young people come into the prison system? |
| GLOVER: | Yes. |
| DEFENSE: | What do you usually see happen with those individuals when they come into the prison system? |
| GLOVER: | Well, I've been doing this about seventeen years now and, you know, a lot of times when young people come into – |
| STATE: | Objection, Your Honor. May we approach? |
| THE COURT: | Yes. |
| STATE: | [during sidebar conference]: Again, we're getting into what someone else is doing as opposed to how it's relevant in this case we have. I feel like she's asking that question again, to draw a comparison between the two and you know, if they want to put on that he's had good conduct, they certainly can do that, but asking about other juveniles I think is just irrelevant to what Mr. Elliott has done. |
| DEFENSE: | Your Honor, it's relevant, because it shows – We can say that he had good conduct, but it's particularly exceptional because it's out of the ordinary and I think that is relevant not only to say he's a good individual, he's a good inmate, but he's actually exceptional the rule that usually occurs with these individuals [sic]. I think |

10

THE COURT: when talking about conduct, comparison is very important.

THE COURT: Wait just a second.

THE COURT: [to the witness in open court]: Warden Glover, what years are we talking about that you had the association with Mr. Elliott?

GLOVER: Well, when he worked for me?

THE COURT: I think you said you knew him six to seven years. When was that?

GLOVER: That would have been from the time that he transferred to the Tucker Unit until I promoted out of the position that I was in and went to the Wrightsville Unit.

THE COURT: What year did you get promoted?

GLOVER: 2014.

THE COURT: So roughly 2007 to 2014?

GLOVER: Yes, sir.

THE COURT: [during sidebar conference]: So he would not have known [Elliott] when he was a juvenile.

DEFENSE: And your Honor, my point is this and this is where I'm going with this[.] Usually, and I think his testimony will be, when juveniles come in, they ultimately get on a path of major disciplinaries. Their stint in the prison system is one that's bad, not just while they're younger, but as they mature through the prison system. And he knew Matthew when Matthew was older, but Matthew had clearly not gone down that path, because he was an upstanding member of the prison community.

He's not going to talk about how Matthew was when he was young. He can't testify to that, but he can say that generally juveniles who come in go down the wrong path and their career in the [Arkansas Department

11

of Correction] is one that's plagued with issues. The individual that he saw was not that.

. . . .

THE COURT: We're not going there. I think the witness can talk about all the nice things he wants to say, but . . . talking about others who did not do as well, making that direct comparison, I don't see how that's relevant.

DEFENSE: But doesn't it show that compared to other similarly situated inmates, that this young man became rehabilitated and rehabilitation is central to the *Miller* case and is a separate mitigating factor in any sentencing proceeding.

THE COURT: Now we're talking about other considerations. I would think it makes a very big difference how somebody survives a situation if they get a job where you've got the supervisors looking out for you. I would think it makes a big difference as to if you're offered certain programs versus those who are not offered certain programs. There are too many other factors that can lead to it. I think you can talk about how this person dealt with the situation, adapted and for lack of a better word, thrived.

. . . .

THE COURT: The objection is sustained.

We agree with the circuit court's ruling to sustain the State's objection. Here, Deputy Warden Glover did not know Elliott when he was a juvenile, and any evidence comparing Elliott's character and subsequent rehabilitation to the character and rehabilitation of other inmates is irrelevant. Thus, we hold that the circuit court did not abuse its discretion in sustaining the State's objection to this testimony. Accordingly, we affirm.

12

## V. *Rule 4-3(a)*

Because Elliott received a sentence of life imprisonment, this court, in compliance with Arkansas Supreme Court Rule 4–3(a), has examined the record for all objections, motions, and requests made by either party that were decided adversely to him. No prejudicial error has been found.

Affirmed.

Special Justice HERMANN IVESTER joins.

WOMACK, J., concurs without opinion.

WOOD, J., not participating.

*Fuqua Campbell, P.A.*, by: *J. Blake Hendrix*, for appellant.

*Leslie Rutledge*, Att'y Gen., by: *Rachel Kemp*, Sr. Ass't Att'y Gen., for appellee.